## J. M. Robinson, Norton & Company v. Legrande.

(Decided December 12, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

Master and Servant—Master's Liability For Injury to Servant—Assumed Risk—Obvious Defects or Dangers.—A servant assumes the risks and hazards ordinarily incident to the business, in which he is engaged and continues, without objection, and with full knowledge of their existence.

BURWELL K. MARSHALL for appellant.

O'DOHERTY & YONTS and ROBT. J. HAGAN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Josie Legrande had been, for about two years prior to September 9, 1910, in the employ of J. M. Robinson, Norton & Company. She operated for said company a power machine, situated on the third floor of their factory building in Louisville. The steps, leading up to this floor, were steep. They were three feet wide; a solid wall was on either side; and there was no hand rail. There was a cleat, or small wooden block, nailed on the side of each of the four steps next to the third floor, on the left hand side going up. No one of these

cleats extended out, according to the testimony of all the witnesses, more than three inches, and some of them put it from one and a half to two inches. The stairway was lighted by windows at the bottom on the second floor and at the top landing, so that one, going up and down, could readily see the way. On September 9, at noon, while Josie Legrande was going down the steps, she fell and sustained severe injuries. Alleging that her fall was occasioned by the negligence of her employers, in failing to furnish her a reasonably safe way or place to go to and return from her work, she filed suit to recover damages, and, in her petition, set up three particulars in which her employers were negligent, to-wit: The stairway was steep, not supplied with banisters, and obstructed by the cleats or blocks of wood nailed on each of the four top steps at the left hand side going up. She testified that she had been in the employ of the defendant company for twenty-two months; and that her employment had taken her up and down this flight of stairs, at least twice a day, during the time that she worked there; that she knew that the steps were steep and not provided with hand rails; and that these small blocks or cleats were nailed or fastened in some way to the four top steps next to the wall on the left hand side going up. Upon this showing the defendant insisted that it was entitled to a peremptory instruction. The trial judge declined to entertain this motion, submitted the case to the jury on the question of negligence, and plaintiff recovered a verdict for $500. To reverse the judgment predicated thereon, the company prosecutes this appeal.

It is practically conceded that there was no error, during the conduct of the trial, in admitting or rejecting evidence. No complaint is made of the amount awarded by the jury, and the sole ground upon which reversal is sought is, that the court erred in not peremptorily instructing the jury to find for the defendant.

Rarely is a case presented, where there is so little conflict in the testimony. Appellee, a woman of mature years, had been in the employ of the appellant company for more than twenty-two months. She, as well as her employers, knew that the stairway was steep; that it was not provided with any banisters on either side; and that these blocks or cleats were nailed upon the side of each of the four top steps. She testified that the stairway was sufficiently lighted. It is most earnestly insisted that this state of facts, as developed by her testi-

mony alone, brings the case squarely within the principle announced by this court in B. F. Avery & Sons v. Lung, 32 Rep., 702, where the court said:

"The doctrine which requires the master to provide and maintain a reasonably safe place in which his servant is to labor, does not admit of that construction which excuses the servant from using his eyes, and the plainest precaution for his own safety. * * * When they can see and actually see the conditions, and without complaint or assurance undertake to do their work in these conditions, in the absence of statutory responsibility, they assume such risks as are incident to the conditions."

We are of opinion that the point is well taken. There is no claim that appellee was not perfectly familiar with the surroundings. She knew of the existence of every defect, if they may be termed such, which, in her petition, she charges contributed to her injury. She made no complaint to her employer nor was she, by any one connected with the defendant company, assured or advised that the steps were safe. So that, in their daily use, it must be presumed that she assumed the risks incident thereto. A very similar question was before this court in American Tobacco Co. v. Adams, 137 Ky., 414. A recovery in that case was sought upon the ground that the employer had not furnished the employe a safe place in which to work. A jury returned a verdict for $1,500, and the company appealed. Appellee slipped and fell to the floor. He alleged that the floor had been permitted to become defective by reason of grooves, worn in by the wheels of a truck that was used in the handling of the tobacco; that the roof was defective and leaky and permitted the water, during the rainy periods, to accumulate in these ruts or grooves in the floor; and that this rendered the floor, at that point, dangerous and unsafe to employes in the discharge of their duties. Appellee had, for sometime, been familiar with conditions and had, in fact, sought to have the defects remedied. The place, at which he was working, was sufficiently lighted for him to see the grooves and the accumulation of water therein. In holding that he could not recover, the court there said:

"Every person of ordinary intelligence knows that a wet floor is slippery, and that one is more likely to fall than if the place is dry. A person under circumstances like these who is required to walk over a slippery floor

in an employment like this which is free from any danger or hazard, cannot recover merely because he slips and falls. The place was not intrinsically dangerous. The employment was not at all hazardous. The implements used were of the simplest character. The servant under facts like these will not be heard to say that he did not see or know the conditions that existed immediately under his eyes.''

In the later case of Foreman v. L. & N. R. R. Co., 142 Ky., 63, the principle announced in B. F. Avery & Sons v. Lung, supra, was reaffirmed, the excerpt above copied being quoted with approval. In Interstate Coal Co. v. Deaton, 148 Ky., 160, a boy was injured while driving a loaded wagon into a door way. The evidence showed that he was familiar with the surroundings and had driven in and out of the door in question eight or ten times a day for eleven days. The testimony further showed that, on the occasion when he was injured, he stopped just before he entered the door, and, although he testified that he did not, at the time, observe the crossbeam overhead, with which he came in contact and which caused his injury, the opinion says:

''While he claims that he did not know of the danger, there are some things that one must know. He must know those things which are right before his eyes, and which he himself admits having seen. The crossbeam was right in front of him. He intended to drive under. He admits that he saw it, and bowed his head to escape being struck. He says that he was caught on the shoulder after he got his head under, and this was due to the fact that the front wheels rose upon the sill. From his own statement, he was seated about the middle of the wagon. Therefore, the front wheels struck the sill before he bowed his head. Although inexperienced in driving a wagon, he had sufficient judgment and discretion to know that if, in approaching an object right before his eyes, if he did not keep out of its way, he would be struck. His earliest instinct taught him this, and it must have been confirmed many a time before he reached the age of seventeen years. It is never necessary to warn a servant of a danger which he knows and appreciates. * * * He was injured solely because he failed to lower his head sufficiently to escape striking the crossbeam, although he had plenty of room for that purpose. The accident, therefore, was due to his own lack of ordinary care, and for this appellant is not responsible.''

From the foregoing and numerous authorities, to the same effect, which might be cited, it is apparent that the rule in this State is well settled, that an employe assumes the risks and hazards ordinarily incident to the business in which he is engaged; and that, although this business may be of a hazardous nature and his surroundings not free from danger, if he, with full knowledge of the existence of such conditions and dangers, without objection, continues in the employment, and injury results, it has uniformly been held that such injury is the result of an assumed risk, rather than of any actionable negligence on the part of his employer. This rule is applicable, with most peculiar force, to the facts in the case at bar.

The only negligence, with which appellant is charged, is that its employes were provided with a stairway that was unusually steep; that there were no hand rails on the side; and that small cleats or blocks were nailed upon one side of the four top steps. Just how long these cleats had been there, the evidence does not show. The stairway had been in this identical condition, during the whole time that appellee had been employed there. She knew just how steep it was. She knew that there were no hand rails; and she knew of the existence of these cleats. It was well lighted. She could see the cleats; indeed, had she looked, she could not have failed to see them. The steps were three feet wide. The cleats covered not more than three inches on the right hand side of each of the four top steps going down. There was left for her use about thirty-three inches, more than five-sixths, of these steps, free and unobstructed by any cleat. Had she exercised the slightest care, she could have avoided stepping on them. Indeed, it is apparent that she must have walked practically against the right hand wall of the building, as she went down the steps, or else she could not have stepped upon the cleat.

Practically this same question was before this court in Mann v. Moore, 24 Rep., 253. In that case Mann was engaged by Moore as a warehouseman. His duties took him frequently to the second floor of the bonded warehouse. Upon one occasion, while on the second floor, he went hurriedly to the first floor to answer a telephone call. In coming down the steps, he fell and was severely injured. Alleging that his injury was due to the negligence of his employer, in failing to furnish him a reasonably safe place in which to work, he sued. The defend-

ant denied liability and pleaded contributory negligence. Upon the trial, there was a verdict for the defendant. Upon appeal here, a reversal was sought chiefly upon the ground that the trial court did not properly instruct the jury. In considering the case, the court found that the instruction complained of was practically a peremptory to find for the defendant, and in passing upon the question of the correctness of the instruction given, said:

"So the question is presented, was there error in instructing the jury peremptorily to find for defendants at the close of the case?  We are of opinion there was not.  Indeed the testimony of appellant himself shows that he knew, or by any kind of care or observation could have known, of the condition of this stair. He used it almost daily for about six months, in fact since it was built and oftener than any other person. If the steps were so steep as to be dangerous, appellant must have discovered this fact in six months' constant use. If the steps are so dangerous as to make appellee liable for injury, the appellant was guilty of the same degree of negligence in not making the discovery in six months' use.  But it is said that the urgent call at the telephone required appellant to hasten, and for the time to forget the dangerous steps.

"We do not think that an ordinary call at the telephone is such an emergency as will excuse a lack of care for one's own safety. A telephone is no more than an ordinary call by one person to another to come for the purpose of conversation.  There was no emergency shown in the call, and if there had been appellant had no notice of such emergency.  He only heard the telephone bell ring. * * * The peremptory instruction should have been given at the close of appellant's evidence."

There is a striking similarity between that case and the case at bar.  The only difference is in degree.  The plaintiff there knew that the steps were unsafe, just as did appellee here.  The court found that the plaintiff was familiar with the steps.  He had used them constantly for six months.  Appellee is shown to have been familiar with the steps in this case, having used them almost daily for twenty-two months.  There was nothing in the present case to require appellee to go down the steps hastily.  She could have taken her own time, and if she went with such haste as to prevent her making a

safe passage down the stairway, appellant was certainly not responsible therefor.   Upon appellee's own testimony, it is apparent that she was not entitled to recover, and the trial judge erred in not sustaining the motion for a peremptory instruction, at the close of her testimony.   Judgment reversed and cause remanded for further proceedings consistent herewith.