## Young v. Norfolk & Western Railway Company.

(Decided October 17, 1916.)

### Appeal from Pike Circuit Court.

1. Master and Servant—Negligence—Proximate Cause.—Negligence of the master, to enable the servant to recover, must be the proximate cause of the injury sued for, and where the negligence proven consists of defects, either in the place, or the tools, appliances or equipments, but the plaintiff, at the time of the injury, was not attempting to use any of such tools, appliances or equipments, nor was he injured because of the unsafe condition of the place; his injury is not the proximate result of the alleged negligence, and he is not entitled to recover.

2. Master and Servant—Appliances—Assumption of Risk.—Where a servant attempts to use defective appliances, made or not made for the purpose of his use in performing his work, and he has knowledge of such defective or dangerous condition, or could have had such knowledge by the exercise of ordinary care, and fully appreciates the danger of its use, he assumes the risk, and, if injured, the master is not liable.

3. Master and Servant—Assumption of Risk.—If the servant attempts to board a freight car by mounting it from the end while it is approaching him at a slow rate of speed, and is injured in an effort to put his foot through the space between a rod fastened to the end sill of the car, and is injured because of the rod being bent, which rod was not so attached for the purpose of enabling one to get upon the car, but for a totally different purpose, and the servant knew this, and also knew of its defective condition, and with such knowledge attempted to use it, he assumed the risk and the master is not liable for any resulting injuries to him.

4. Master and Servant—Assumed Risk.—The doctrine of assumed risk is available to an interstate common carrier as a defense to an action for alleged negligent injuries to its servant in all cases except where the negligence of the carrier consists in a failure to observe some Federal statute enacted for the benefit and protection of the servant.

J. J. MOORE and JOHN F. BUTLER for appellants.

J. R. JOHNSON, JR., and HOLT, DUNCAN & HOLT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant (plaintiff below) is a stone mason by trade, and at the time of the sustaining of the injuries of which he complains in this suit he was in the employ of the appellee (defendant below), and engaged in assisting to construct a stone wall alongside of defendant's track, between it and Elkhorn Fork of Tug River, near Northfolk in West Virginia. This wall was being constructed in order to prevent the water in Elkhorn Fork from washing away the railroad track of defendant, and was being built with large blocks of stone laid in cement. The crude stone from the quarry had been hauled and dumped beside the track at a point about fifty yards from where the wall was being constructed, and from the point where it was dumped to where the stone was being put into the wall is upgrade. A temporary track had been constructed outside of the wall, and between it and the stream, upon which the blocks of stone, after being dressed and fitted to be put into the wall, were transported, by the use of a flatcar, to where the work on the wall was being carried on.

The plaintiff is some thirty-odd years of age, and had been following the trade of stone mason for many years, and had been engaged in this character of work for a long time, having worked on this particular job for about three months previous to the time of his injury. The specific duties which he was performing were to dress and prepare the blocks of stone ready to be put into the wall, after he had first made or obtained measurements of the size of the piece needed. When he would finish dressing and preparing a block and having it ready to be put into the wall, he would fasten it to the end of a crane which extended out over the end of the car running and being operated on the temporary track, and with some kind of machinery located on this car the stone would be hoisted, and while extending out beyond the end of the car and over the track it would be moved to the wall, and placed therein. The car on the temporary track was propelled in some way not altogether explained by a hoisting engine located on it, and which engine also operated the crane or derrick mentioned.

On the occasion in question a piece of stone had been prepared and the grab-hooks attached to the derrick had been hooked thereto, and it had been made to swing

around in front of the car on the temporary track and the car started from the rock pile to the wall. The plaintiff had attached the grab-hooks to the rock, which was swinging something like twenty feet beyond the end of the car, and while standing between the rails of the temporary track, with the car approaching him at a speed of about one mile an hour, he attempted to board it by getting upon it from the end approaching him, and in doing so his right foot was caught under the wheels of the car and so crushed that it became necessary to amputate his limb between the knee and ankle. This suit was filed to recover damages for the injury, it being alleged that the defendant was at the time engaged in interstate commerce, as was also the plaintiff, and that his injury was due to the negligence of the defendant in failing to furnish him a safe place in which to work, and safe appliances with which to do his work.

The first ground of negligence insisted on by plaintiff is that it was a part of his duty to get upon the car and to act as brakeman for the trip from the rock pile to the wall, and that there was no safe place for him to mount the car from either side because, as he claims, there was an excavation next to the wall which was filled with water, and which prevented him from boarding the car from that side, and on the other was dirt and rock sufficient to prevent, or at least interfere, with his boarding the car from that side.

The second ground of negligence, that of failing to furnish safe appliances with which to do the work, is attempted to be shown because it is insisted that the car containing the hoisting engine and other appliances was not properly equipped with necessary steps to enable plaintiff to get upon it to perform his duty, as he claims, of brakeman, while the stone was being carried to the wall. The trial court, after the evidence had been completed, sustained the motion of the defendant to instruct the jury to return a verdict for it, which was accordingly done, and from the judgment rendered thereon the plaintiff prosecutes this appeal.

The answer is a general denial, a plea of contributory negligence, and assumption of risk. A question at the threshold is presented as to whether the plaintiff at the time of the sustaining of his injuries was engaged in interstate commerce so as to bring his case within the Federal Statute known as the Employers' Liability Act,

plaintiff contending that under the doctrine laid down in the case of Pederson v. Delaware, L. & W. R. R. Co., 229 U. S. 146, he was engaged in interstate commerce at the time he was injured, while this is denied by the defendant, it relying upon the same case for its position. The employe in that case, at the time of his injury, was engaged in carrying bolts or rivets to be used next morning in repairing a railroad bridge which was in use by the defendant therein in transporting both intrastate and interstate trains. The bridge had long previous to that time been appropriated, so to speak, to the services which it was performing as a part of defendant's railroad track and system. Under the circumstances, the Supreme Court of the United States determined that the plaintiff was engaged in interstate commerce. In the opinion, however, it is said: "Of course we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities, and during their use as such." The contention is here made by the defendant that although the railroad track, at the particular point where the accident happened, is one used in transporting interstate traffic, and is used by interstate trains, that the wall which was being constructed, and upon which the plaintiff was at work, had not at that time become an instrumentality of commerce, as it had not been appropriated or set apart to that purpose; that it was an instrumentality which was intended to be used as a part of the interstate railroad track when completed, but until completion it had none of the characteristics of an interstate instrumentality. We do not feel called upon, in the view which we have reached, to determine this question, as we have concluded that the injury to plaintiff, under the facts of this case, is the result of a risk which he assumed, and which is available to the defendant, whether the cause of action arises out of interstate traffic or not.

The record shows that the car on the temporary track, and which the plaintiff attempted to mount when he was injured, called in the transcript "railroader," was equipped with metal stirrups at each of its four corners, they being attached to the sides near the corners. On its end sill, where plaintiff attempted to get on it,

and right beneath the sill, was an iron rod between one-half and three-quarters of an inch in diameter, and with both ends bolted to the sill, after being bent to right angles, so that after being attached the rod would be parallel with the end of the sill and extended below it something like three or three and a half inches. In the center of the end of the car, or "railroader," was a perpendicular brake-rod, on the top of which was an ordinary brake-wheel, and plaintiff, in attempting to get upon the car, grabbed the brake-rod and attempted to put his foot into the space between the rod attached to the sill of the car, as described, but for some reason he failed, and his foot slipped, causing him to fall and become injured, as described. The stirrups on the side of the car were shown to be slightly bent under the car, and it is also shown that the rod attached to the sill which plaintiff attempted to use on this occasion was also slightly bent toward the body of the car. It is therefore insisted that inasmuch as the stirrups were bent, their use was rendered unsafe, and that plaintiff was compelled to use the hand-hold made by the iron rod at the end of the car, and that it was unsafe, and he was therefore not furnished with safe appliances by which he could board the car to perform what he contends was his duty to work the brake. He furthermore insists that he was, at least to some extent, prevented from endeavoring to board the car from its sides, because of the obstructions hereinbefore mentioned. However, it is shown that on this particular occasion the piece of stone which was being carried to the wall had been prepared and picked up from fifteen or twenty feet to the side of the temporary track, and that plaintiff had walked that distance on to the track in adjusting the stone so as to carry it to the wall, and while it appears that there was some dirt, and perhaps pieces of stone, scattered along that side of the temporary track, yet physical facts, according to plaintiff's own testimony, refute the idea that such obstructions totally prevented anyone from getting on the car from the side. Be that as it may, the fact is that there was no effort made to board the car from either side of it, and as a consequence no attempt was made to use the alleged defective stirrups in getting on it.

Under repeated decisions of this and other courts, as well as the teaching of textwriters, the negligence

charged to the master must be the proximate cause of the injury complained of. This principle is stated in Louisville and Nashville Railroad Co. v. Keiffer, 132 Ky. 419, wherein the general rule is stated to be:

"The proximate cause of an accident is the immediate cause, or that without which it would not have happened. It is not the remote cause of the accident, or the occasion of it. In Cooley on Torts, section 70, the rule is thus stated: 'If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission of another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote.' See, also, Thompson on Negligence, section 47; Shearman and Redfield on Negligence, section 31; Setter's Admr. v. City of Maysville, 114 Ky., 60, 69 S. W. 1074."

And in the case of Lucas Land and Lumber Co. v. Cook's Admr. 164 Ky. 481, it is said: "In order to establish the proximate cause it is necessary that a causal connection be shown between the negligent act and the injury. The act must have been the cause which produced the injury. The injury was caused, in this case, by the independent and subsequent act of Cook." See, also, Sublett v. M. & O. R. R. Co., 145 Ky. 707; Hummer's Ex'x, v. L. & N. R. R. Co., 128 Ky. 486; St. L. I. M. & S. Ry. v. McWhorter, 229 U. S. 265. The rule is so well settled that we do not feel called upon to refer to other authorities substantiating it.

In this case the defective condition of the stirrups at the sides of the car, if they were so defective as to be unsafe, sustained no causal connection whatever with the injury which plaintiff sustained and for which he sues, and, furthermore, it might be true that at points some obstructions might have been in the way of getting on the car from the side of the track, yet it is shown that such obstructions, if any, did not on this occasion prevent the plaintiff from getting on the car, because, as we have seen, the stone had been picked up some fifteen or more feet to the side of the track, and at a point from which the plaintiff could have gotten on the car if he had so desired. However this may be, it is sufficient to say that he made no effort to board the car in that manner, and the obstructions, if they existed to such an extent as to prevent him from doing so, were not the proximate cause of the injury.

This leaves as the only proximate cause of the injury, as insisted by plaintiff, the bent hand-hold into which he attempted to put his foot in an effort to mount the car from its end as it approached him. As to whether this rod, or hand-hold, was bent the evidence is very conflicting, but, whatever its condition, it is undeniably true, as shown by the record, that the plaintiff knew it, and, intelligent man as he is, necessarily appreciated the danger, if any, in attempting to use it in the manner he did. The law is that although it is the duty of the master to furnish safe places in which their servants may perform their work, and safe tools and appliances with which the work may be done, still, if the places or appliances are not safe, and the servant knows it and appreciates the danger in attempting to use them he assumes the risk incident to their use under the circumstances, and if injured the master is not liable. Buey's Admrx. v. Chess & Wymond Co., 27 Ky. Law Rep. 198; Cooper's Admr. v. Oscar Daniels Co., 29 Ky. Law. Rep. 1172; Big Hill Coal Co. v. Abney's Admr., 125 Ky. 355; B. F. Avery & Sons v. Lung, 32 Ky. Law. Rep. 702; Alkins' Admr. v. New Livingston Coal Co., 115 S. W. (Ky.) 203; Mowrey v. Frazier & Foster, 120 S. W. (Ky.) 289; Foreman v. Louisville and Nashville Ry. Co., 142 Ky. 63; Burch v. Louisville Car Wheel and Railroad Supply Co., 146 Ky. 272; J. M. Robinson-Norton & Co. v. LeGrande, 151 Ky. 188; Cinn., N. O. & T. P. Ry. v. Goldston, 156 Ky. 410. Many other cases might be cited, but the rule is so firmly established that it is now everywhere admitted.

Without making excerpts from any of the cases referred to, the rule announced is that if the defects constituting the alleged negligence of the master are known to the servant, or by the exercise of ordinary care could have been known, and the danger incident to performing the work is appreciated by him, then the risk is assumed by the servant. It is extremely doubtful, under the testimony, whether it was a part of plaintiff's duty to board the car for the purpose of working the brake, as it is shown by a number of witnesses that another person was at the brake, and there was consequently no necessity of his getting upon the car. This is not positively denied by him, but he says that if there was anyone at the brake he did not observe him. Under the rule referred to, however, the plaintiff assumed the risk of at-

tempting to board the car in the manner he did. It is undisputedly shown that the rod upon which he attempted to place his foot was not made or constructed for the purpose of mounting on to the car from the ground, but it was put there to serve as a handhold for the servants in coupling the car, or in connecting the air when the car should be attached to a train. Plaintiff does not deny but that he knew the purposes for which it was maintained. If it was bent, or in any way imperfect, he knew it. He had not only been working, as he was when he was injured, for about three months, but had made some ten or twelve trips from the wall to the rock pile on the particular morning of the accident, and he says in his testimony: "Q. Had you used it (hand-hold) in such a way as to know exactly where it was? A. He says he was in the habit of so getting on there, but he knew where it was all the time." It might be here stated that the plaintiff is an Italian, and his testimony was given through an interpreter. In other parts of his testimony he says that the hold could be seen when standing away from the car, as he was standing upon the occasion of his injury. We are convinced that the testimony shows that he knew of the condition of the hand-hold, but if not he certainly could have known it by the exercise of even the slightest care.

The defense of assumed risk is available in suits brought under the Employers' Liability Act, unless the negligence of the carrier consists in a violation of a statute enacted for the safety of employes; such, for instance, as the act known as the Safety Appliance Act. Section 4 of the Liability Act is: "Such employe shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe." And in the case of Seaboard Air Line v. Horton, 233 U. S. 492, in construing the application of Section 4 the court said: "It seems to us that Section 4, in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action." To the same effect are that court's opinions in the cases of Chesapeake & Ohio Railroad Co. v. De Atley, 241 U. S. 240. Jacobs v. Southern Railway Co., *idem.* 229.

It might be here said that in one paragraph of the answer the law of West Virginia, being the place of the accident, was relied upon, and in this paragraph it is alleged that under the law of that state the doctrine of assumed risk prevails, and that under the circumstances of the accident complained of the plaintiff assumed the risk. Upon the trial there was read in evidence the opinion of the Supreme Court of that State in the case of Chandler v. American Car and Foundry Company, reported in 69 West Va. Supreme Court Reports, page 391. Upon examination, we find that the doctrine under consideration, as announced in that opinion, is equally as broad as we have found it to be in this State, and as we have found it to obtain in the Federal Supreme Court. That court, in upholding the doctrine under consideration, in the opinion referred to, said:

"The direct and proximate cause of plaintiff's injury was the piling of too many angle-bars on the truck, and then undertaking to push it after it was heavily loaded, and taking a dangerous position by the side of the truck where the iron in falling would fall upon him. These were plaintiff's own acts; everything which contributed to his injury was open and visible, and according to the evidence now before us, he must be regarded as being fully cognizant, at the time, of all accidents likely to result from the use of the means and appliances employed in the work at which he was engaged, and to have assumed the risk of such accidents."

So, whether this case is to be governed by the rule of the Federal Courts, as applied to the Employers' Liability Act, or by the one prevailing in this State, or under the laws of West Virginia, plaintiff must be found to have assumed the risk of his attempting to board the car under the circumstances as found in this case, and the defendant is therefore not liable for the consequences.

The trial court having so concluded, its judgment is affirmed.