## Turner, Day & Woolworth Handle Company v. Allen.

(Decided January 28, 1919.)

Appeal from Jefferson Circuit Court
(Common Pleas, First Division).

Master and Servant—Safe Place to Work—Assumption of Risk.— While it is the duty of the master primarily to exercise reasonable care to provide the servant with a safe place in which to work, and with safe tools, appliances and materials with which to work, the negligence between the master and servant must be measured by the character and inherent dangers of the work engaged in, and in accepting an employment the servant assumes all the ordinary and usual risks which are incident to the work, and which arise from a known and obvious danger.

FRED FORCHT and CHARLES W. MORRIS for appellant.

ELMER C. UNDERWOOD for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, John W. Allen, was an employe of the appellant, Turner, Day & Woolworth Handle Company, which was a corporation and engaged in the business of making wooden handles for hatchets, hammers, axes, and other tools. The process of making the handles, was as follows: the timber was received by the appellant, in logs, and was then, cut by a saw, into billets of the proper length and dimensions, for the making of the kind of handles desired, and the sawyer would endeavor to so cut the timber, as to not include, in a billet, any knot or defect in the timber, which would obviously render it unfit to be worked into a handle on account of its poor

quality. The billets were all thrown together, by the persons engaged in the sawing, and when handles of a certain class were desired, two employés would go through the billets and select the billets, suitable for making the handles of the class desired. These employés were called "graders," and the service performed by them, was denominated, "grading" the billets. The appellant manufactured several classes of handles, which were distinguished from each other, by the quality of the timber out of which each class was made. One or more classes were made out of billets, which were free from knots, as well as other defects,while there were other classes of handles, which were made out of billets, containing knots, and another class was made exclusively of billets, which had knots in them. A large open knot rendered the billet a "cull" and unfit for making a handle on account of the poor quality of the timber and the graders, as well as the lathe men, were directed to reject them, but the billets, containing knots, other than open ones were worked into handles. After the billets were "graded," they were carried to the lathes to be turned into handles. The lathes had circular saws about ten inches in diameter, and clamps, for securing the billet for the operation of the saw. The appellee had been in the employment of the appellant for eight years, and five years of that time, he had charge of the operation of a lathe, and hence, was an experienced man, in the operation of a lathe in making handles of all kinds, and was well acquainted with the manner of doing the work of that kind, at appellant's establishment, and of all the dangers and risks incident to that character of work. It seems, that in the work of operating the lathe, the appellee, performed all the duties attached to it. He adjusted the billets to the machine, and took the billets from where they were placed, for the purpose of being operated upon, and placed them, in the machine. On the 10th day of December, 1915, he claims, that while operating the lathe, he placed in it, a hickory billet, about fourteen inches in length and three inches in width, and the same in thickness, and there was in the billet, a knot, about the size of a dime, which penetrated the wood from one side to the other, about four inches, from the end of the billet, which was intended to be sawed into the "eye" of the handle. When the saw came in contact with the knot, the billet was broken at the knot, and the larger portion was

thrown out, with great force and struck him upon the side, just above the right hip. He claims, that this occurred on Saturday afternoon and rendered him unable to continue the work, further, on that evening, and gave him great pain, but, that he returned to work on the following Monday, and thereafter, continued to work, at the lathe, but, not all the time, until about the middle of the following April or May, when he was no longer able to do that kind of work, and quit and secured a less onerous character of employment. He never, at any time, made any report or complaint to the appellant, of his injury. He claims, that the force of the blow upon his side caused injury to him, internally, and resulted in the creation of an abscess within his body, at that point, but, of which there is no visible evidence. He instituted this action, in October, 1916, and upon a trial, recovered a verdict and judgment for the sum of $700.00. The appellant's motion for a new trial was overruled, and it has appealed, and assigns as prejudicial errors of the trial court, that it overruled its motion for a directed verdict in its favor at the conclusion of the evidence offered by appellee and at the conclusion of all the testimony, and misinstructed and refused to properly instruct the jury.

The claim by appellee for damages, is asserted upon the grounds, that the appellant negligently furnished him a billet, to be turned into a handle, which contained a knot, and the attempt to make a handle from it, was dangerous, on account of the knot in it, and that appellant knew or by the exercise of ordinary care, should have known of the dangerous character of the billet, and that he did not know of its unsafe and dangerous character when he placed it in the lathe. The appellant traversed the averments in the petition, and interposed pleas of contributory negligence and assumed risk.

(a) The appellee, after testifying, that he had worked for appellant in the operation of a lathe and engaged in turning handles for five years, before he received the alleged injury, further, testified, that he did not see and did not know, that the billet, which injured him, contained a knot, when he placed it, in the lathe; that such a knot in a billet, rendered it dangerous to be put in the lathe; that when he began to work at a lathe and turn handles, the foreman said to him, in substance, that if he saw a knot in a lathe, to throw it aside; that, however, he had frequently put billets in the lathe,

which contained knots, and did so, when the knot was not so large in size, as the one complained of; that frequently, billets, on account of containing knots, were thrown out by the lathe, in the same way the one complained of was thrown out; that this had occurred, sometimes, once a day and sometimes, more often; that on these occasions, the billets had struck him on the hands, arms, and other portions of his body, but, that the time, he suffered the injury, was the first time, a billet had been thrown out, by reason of a knot, and struck him at the point, where the one complained of, struck him; that often times, the knots, in the billets, did not cause them to fly out of the machine, but, they worked through all right, but the knots, in other billets would cause them to fly out. He does not testify, that the billets, upon which he was working, at the time of his injury, were to be turned into the class of handles, which were to be free of knots, and in fact, declined to make such statement; and he does not testify, that it was the duty of the "graders" to make an inspection of the billets, for the purpose of rejecting those, which contained knots, but, his testimony shows, that the billets with knots in them, were turned in the lathe, with his knowledge, and that in his work, he did so frequently, and had been oftentimes struck by billets, which the knots caused to fly out of the machine. Hence, considering all of his testimony, together, the only conclusion which can be arrived at, is, that he knew, that there was no inspection made of the billets for the purpose of finding and rejecting all of those, with knots, in them; that the billets contained knots, when they were brought to the lathe and placed in it; that the business, in which he was engaged was in part to turn billets, with knots in them; and that, if a prudent man, he must reasonably expect, that the billets or some of them, would contain knots, and under such circumstances, if the full meaning is given to his statement, that he had been directed, five years before, to reject the billets, in which he should see knots, and considering the statement to be true, it would appear, that it was made his duty to inspect the billets for knots, and to reject such as he thought would be dangerous to put in the lathe, as he testifies, that he did put into the lathe, the billets, which contained knots, as large as a lead pencil, as he did not regard such knots as dangerous. The other evidence offered by him as to the duties of the "graders," was

not contradictory of the evidence given by himself, and proved, that it was not their duty to reject billets, on account of the knots in them, unless the knots were so large, as to render the billets unfit for the making of a handle of any class, and such as the sawyer should have cut out. The evidence offered by the appellant upon the subject of the "graders'" duty, agrees, with that, offered by appellee, to the effect, that it was the duty of the "graders" to reject the billets, which contained large, open knots, only, and therefore, unfit to be made into a handle of any class.

(b)   It may be conceded, that it is the primary duty of the employer to exercise reasonable care to furnish his servant with a reasonably safe place in which to work, reasonably safe tools, machinery and appliances, with which to do the work, and reasonably sound and safe materials to be worked. This principle is well established, and in regard to its soundness, there is now no dispute, but, as a part of the law regulating the rights of master and servant, is the principle, that while a servant in accepting an employment, does not assume any extraordinary and unusual risks, he does assume all the ordinary and usual risks and perils, which are incident to the employment, and all risks of which he has knowledge, which attend such an employment, and any risk incident to the employment, which arises from a known or obvious danger in performing the service. The master is not an insurer of the safety of the servant, and the negligence, as between him and the servant, must be measured by the character and danger of the business engaged in. The fact, that the work in which the servant is employed, is hazardous, does not relieve him from the assumption of risks, which are obvious or incidental to the work, as the servant has a right to accept and engage in a hazardous employment, if he desires to do so. Nichols v. Abadie, 124 S. W. 325; Young v. Norfolk & Western Ry. Co., 171 Ky. 517; L. & N. R. R. Co. v. Foley, 94, Ky. 224; Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 386; Buey's Admr. v. Chess & Wymond, 85 S. W. 563; Flaig v. Andrews Steel Co., 141 Ky. 391; Goss v. Kentucky Refining Co., 137 Ky. 404; Wilson v. Chess & Wymond Co., 117 Ky. 567; C. & O. Ry. Co. v. McDonall, 16 Ky. L. R. 1; Ky. Freestone Co. v. McGee, 118 Ky. 306; Louisville Ry. Co. v. Bocock, 107 Ky. 223; Ashland Coal & Iron Co. v. Wallace, 101 Ky. 626; Greer v. Louis-

ville Ry. Co., 94 Ky. 169; Louisville Ry. Co. v. Milliken, 21 K. L. R. 489; Ohio Valley Ry. Co. v. McKinley, 17 K. L. R. 1028. Hence, the master does not insure the servant against the results of injury, which arises from a danger, inherent in the work, in which the servant is engaged, and which is known to the servant, and obvious to him. The risk, which the appellee in the instant case, underwent, from a billet, with a knot in it, being thrown out of the lathe, seems to have been one of the incidents of the work of operating the lathe, and well known to the appellee. The turning of handles out of billets, containing knots, was the business, which appellee undertook to perform, as well as the business of turning them out of billets, which did not contain knots. Billets were cast out by the machine for various reasons, besides that of having knots in them. The appellee, therefore, failed to show a case, which entitled it to submission to the jury, and the court should have sustained the motion for a directed verdict in favor of the appellant.

The judgment is therefore reversed, and cause remanded for proceedings consistent wth this opinion.