## Baldridge v. W. M. Ritter Lumber Company.

(Decided November 4, 1921.)

### Appeal from Pike Circuit Court.

1. Master and Servant—Assumption of Risk—Contributory Negligence.—If the work being performed and the place where it is done are not necessarily dangerous and are so simple that any person of ordinary intelligence can readily see and understand the dangers attendant upon its performance the master is not liable for an injury to his servant who possesses ordinary intelligence for any injuries sustained, since the injury is one assumed by the servant or was produced by his contributory negligence, dependent upon the facts.

2. Master and Servant—Assumption of Risk.—A servant assumes the risks and hazards ordinarily incident to the business in which he is engaged and continues, without objection, and with full knowledge of their existence.

F. M. STOWERS for appellant.

AUXIER, HARMAN & FRANCIS for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The appellant and plaintiff below, Charlie Baldridge, was working for the appellee and defendant below, W. M. Ritter Lumber Company, engaged in "snaking" saw logs from a "grabhole" to the tramway of defendant where they were loaded on tram cars and hauled to the railroad. On September 7, 1918, while so engaged, and when he was between twenty and twenty-one years of age, plaintiff sustained an injury to one of his feet by its being caught between the end of a log which he was "snaking" and a rock at the side of the road or log trail about half way between the "grabhole" and the tramway, the entire distance of which was about two hundred yards.

The injury, while serious, did not destroy the foot, and plaintiff brought this action to recover damages of defendant, alleging that it was negligent in failing to furnish him a safe place to work or safe tools or appliances with which to perform his work, by reason of which the accident occurred. The answer put in issue the allegations of the petition and pleaded both assumed risk and contributory negligence, which two latter pleas were controverted, and at the close of plaintiff's testimony as to how the accident happened the court sustained defendant's motion for a peremptory instruction in its favor and the jury returned a verdict accordingly, followed by a judgment dismissing the petition, and this appeal calls in question the propriety of the court's ruling in sustaining that motion.

Plaintiff testified in substance that he was reared in Floyd county and had experience in logging and had worked for defendant at various places where it was engaged in gathering logs together in the same manner as was being done at the time he was injured; that while he did not work all the time, when so engaged, at driving the team along the haulway, yet he had engaged in that part of the service and had also worked at driving grabhooks. He explained that the method of getting the logs from the "grabhole" to the tramway was to haul them over the driveway, which in this instance was on a considerable incline, and that the logs being hauled on the particular occasion were from ten to sixteen feet long and from ten to twenty inches in diameter; that the grabhooks were about eighteen inches long and consisted of a chain, on either end of which was a hook and the logs were connected or coupled by driving one of the hooks in the end of a log and the other one in the end of a coupled one, and when the train of single logs, thus coupled, was of sufficient length it was pulled along the trail by two horses abreast; and that while he was driving the team he undertook to cross the train in order to avoid some brush at the side of the driveway on the right hand side, the front end of the second log from the team caught his foot against a rock on the left side of the driveway, inflicting the injuries of which he complains. The trip which he was then making was the third one that morning and he testified that he was perfectly familiar with the character of driveway as well as the location of the rock against which his foot was mashed, and of course he saw where the logs were coupled together, as well as the man-

ner of coupling. He admits that the driveway was broad enough for the double team to travel it without obstruction.

His counsel on this appeal insists, (1) that the defendant was negligent in allowing brush to be at the edge of the driveway, thus rendering it necessary for plaintiff to cross the logs at any place throughout the journey; (2) that it was negligent in fastening the logs together in such a way as to allow any slack in the chain between the grabhooks, on account of which the log which caught plaintiff's foot projected beyond the one he crossed in front of it, and but for which the accident would not have happened, and (3) that it failed to instruct plaintiff as to the dangers incident to the employment when he was put at driving the team. In disposing of this case we will consider grounds 1 and 2 together.

The rule is that it is the primary duty of the master to exercise ordinary care and to furnish his servant a reasonably safe place in which to work, and reasonably safe tools and appliances with which to perform the work, is elementary and well known to all students of the law. It has been reiterated time and again by text writers and courts, including this one; but while this is true it is equally well settled that there are other principles governing the rights and duties existing between master and servant which affect the right of the latter to recover damages for injuries sustained. One of them is that where the work, as well as the tools employed, are simple and the defects complained of are obvious and known to the servant, and the injury complained of is attributable to the method which he employed there can be no recovery. The same is true where the injury is due to an ordinary risk incident to the employment and which arises from a known or obvious danger in performing the service. In such cases the risk is assumed by the servant and even where the danger was due to the negligence of the master, if it was so obvious that an ordinarily prudent person would not engage in the work, or if it was known by the servant, and with such knowledge he continued to prosecute the work according to his own plans, no recovery can be had.

In the case of Turner, Day & Woolworth Handle Co. v. Allen, 183 Ky. 531, the above general principles are thus stated: "It may be conceded that it is the primary duty of the employer to exercise reasonable care to fur-

nish his servant with a reasonably safe place in which to work and with reasonably safe tools, machinery and appliances with which to do the work, and reasonably sound and safe materials to be worked. This principle is well established, and in regard to its soundness, there is no dispute, but, as a part of the law regulating the rights of master and servant, is the principle, that while a servant in accepting an employment, does not assume any extraordinary and unusual risks he does assume all the ordinary and usual risks and perils, which are incident to the employment, and all risks of which he has knowledge, which attend such an employment, and any risk incident to the employment, which arises from a known or obvious danger in performing the service. The master is not an insurer of the safety of the servant, and the negligence, as between him and the servant, must be measured by the character and danger of the business engaged in. The fact, that the work in which the servant is employed is hazardous, does not relieve him from the assumption of risks, which are obvious or incidental to the work, as the servant has a right to accept and engage in a hazardous employment, if he desires to do so.'' Numerous cases from this court are cited in the opinion in support of the excerpt.

A case very much analogous to this one is that of J. M. Robinson, Norton & Co. v. Legrande, 151 Ky. 18. In that case the plaintiff was injured on a stairway, which was narrow, unusually steep, and had no hand railing, and some of the steps had cleats nailed on them, and while plaintiff was using it she fell and sustained the injuries for which she sued. She had known of the existence of the stairway in the same condition in which she sustained her injuries for some time. This court reversed a judgment in plaintiff's favor for $500.00, upon the ground that a peremptory instruction should have been given in favor of defendant, and said: ''She (plaintiff) knew just how steep it (the stairway) was. She knew that there were no hand rails; and she knew of the existence of these cleats. It was well lighted. She could see the cleats; indeed, had she looked, she could not have failed to see them. The steps were three feet wide. The cleats covered not more than three inches on the right hand side of each of the four top steps going down. There was left for her use about thirty-three inches, more than five-sixths, of these steps, free and unobstructed by any cleat. Had she exercised the slightest

care, she could have avoided stepping on them. Indeed, it is apparent that she must have walked practically against the right hand wall of the building, as she went down the steps, or else she could not have stepped upon the cleat.''

Other cases from this court in which there are analogous facts and like results are B. F. Avery & Sons v. Lung, 32 Ky. L. R. 702; Foreman v. Louisville & Nashville Railroad Co., 142 Ky. 63, and Inter-State Coal Co. v. Deaton, 148 Ky. 160.

The general principle, as announced above, is thus stated in the Robinson case: ''From the foregoing and numerous authorities, to the same effect, which might be cited, it is apparent that the rule in this state is well settled, that an employe assumes the risks and hazards ordinarily incident to the business in which he is engaged; and that, although this business may be of a hazardous nature and his surrounding not free from dangers, if he, with full knowledge of the existence of such conditions and dangers, without objection, continues in the employment, and injury results, it has uniformly been held that such injury is the result of an assumed risk, rather than of any actionable negligence on the part of his employer.''

According to plaintiff's testimony he had an unobstructed space over which to haul the logs, wide enough for the team to walk abreast and with nothing following the team to occupy that space except the train of logs, the thickest of which was twenty inches. And, if perchance it became necessary to cross the train during the trip, he was the sole judge as to where and when, as well as the manner in which, it should be done; and if he selected as the place one immediately opposite a rock and when the coupling of the logs was passing it, he and not his employer should be responsible if an accident happened. There is nothing to show but that the driveway was of the same width and as safely constructed as are the ordinary, usual, similar ones; nor is there anything appearing in the record to show that the coupling of the logs with the grabhooks and the chain was not done in the usual and ordinary way. Indeed, it would be somewhat difficult to couple them with such contrivances so that the end of one would not project, to some extent at least, beyond the one in front of it. Surely plaintiff, who is shown to have at least ordinary intelligence, was cognizant of that fact, and if he selected a time and a

place to cross the logs he was hauling when and where his foot was liable to be caught between a rock, the presence of which he knew, and the end of an approaching log, which he plainly saw or could have seen, rather than to cross in the middle of a log, conceding that it was necessary for him to cross at all, he himself is responsible for the consequences and not his employer. The work in which plaintiff was engaged was of the simplest sort, as was also true of the contrivances employed. It required no extraordinary intelligence or continued experience to successfully perform it, and it was not being done, as insisted, under the immediate direction of a vice-principal. The cases cited heretofore in this opinion, and many others which could be, particularly Louisville Water Co. v. Darnell, 189 Ky. 771, fully sustain the conclusion stated, and we find no merit in grounds 1 and 2.

Ground 3 is not seriously insisted upon, since there is no duty upon the master to warn against ordinary dangers and risks which are assumed by the servant, nor is it necessary to warn or instruct the servant where the work is simple and of a character that one of ordinary intelligence can understand the method of its performance and fully realize and appreciate the probable dangers attendant thereon. The same is true with reference to the tools and contrivances used by the servant in the performance of his work.

Upon the whole case we find no error in the judgment, and it is accordingly affirmed.