## Lile v. Louisville Railway Company.

(Decided December 1, 1914.)

### Appeal from Jefferson Circuit Court
(Common Pleas, Fourth Division).

1. Master and Servant—Evidence—Burden of Proof—Res Ipsa Loquitur—Application of Doctrine.—The doctrine of res ipsa loquitur

applies in a case of master and servant in a more restricted sense than in a case of carrier and passenger, because of the difference in the degree of care imposed and the character of defenses that may be made.

2. Master and Servant—Appliances—Duty to Furnish.—A master is not required to furnish the servant absolutely safe appliances with which to work, but discharges the full measure of his duty when he exercises ordinary care to furnish appliances which are reasonably safe.

3. Master and Servant—Recovery for Defective Appliances—Burden of Proof.—Where a servant seeks to recover for an injury growing out of defective appliances, the fact that a piece of machinery breaks is not of itself sufficient to make out a prima facie case, but it must further appear that the master knew of the defective condition of the machinery or could have known of it by the exercise of ordinary care.

4. Master and Servant—Injury to Servant—Inference of Negligence —Circumstances of Accident.—In a case of master and servant, the inference of negligence is deducible not from the mere happening of the accident, but from the attending circumstances.

5. Master and Servant—Injury to Servant—Burden of Proof—Evidence.—Where a motorman on a street car, in an action against the company to recover for injuries resulting from the breaking of a connecting wire, not only failed to prove from the attendant circumstances that the accident would not have happened had defendant exercised proper care, but actually proved that the wires were inspected during the morning preceding the accident, and were found to be in proper condition, held under the evidence that plaintiff not only failed to raise the presumption of negligence on the part of the master, but actually proved that proper care was exercised, and that a peremptory in favor of defendant was properly directed.

N. C. CURETON, GEORGE DAILY and EDWARDS, OGDEN & PEAK for appellant.

FRANK P. STRAUS, EUGENE R. ATKISSON and BARRET, ALLEN & ATKISSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries by plaintiff, J. A. Lile, against defendant, Louisville Railway Company, the trial court, at the conclusion of the evidence, directed a verdict in favor of the defendant. Plaintiff appeals.

The facts are these: In the month of January, 1912, plaintiff was employed by defendant as a motorman. He continued to work in this capacity until June 7, 1912. At the time of the accident he ran on the Hancock street

line, operating a single truck car. He took the car from the barn at 4:35 p. m. on the day of the accident. He made four complete trips to the end of the line at Logan and Breckinridge streets. On these trips he operated the car without trouble. About 10 o'clock that night, as the car crossed the intersection of Chestnut street, the light suddenly went out. Plaintiff permitted the car to coast down to Gray, street, a block away, where it stopped. There plaintiff made an examination of the overhead switch, fuse wire, light switch and controller, to ascertain, if possible, the cause of the trouble. While making this investigation, another car, on its return trip, running on the parallel track, was stopped. The motorman and conductor of that car undertook to assist plaintiff in starting his car. To this end, they tried the usual and customary plan of placing one end of the switch bar on the parallel track and the other end on the running gear of the disabled car. Plaintiff was then told to turn on or operate his controller backwards and forwards. Underneath the body of the car were ten wires which controlled the current. One of the ground wires was broken. For this reason the current did not pass beyond the motor, where it was dormant. While the car was in this condition, plaintiff took hold of the controller and brake and at the same time tapped the gong. In this manner he made, with his body, the connection required to complete the circuit, and was injured. It further appears from the evidence that there were two motors on the car. The ten small insulated wires, including the ground wire which broke, connected the two motors on the running gear to the controller located on the front end of the body of the car. These wires ran through the floor immediately under the controller and back under the car. They were attached to the floor by cleats until the beam was reached. They then passed through the opening in the beam down to the motors. The break in the wire occurred at a point where it left the beam to be attached to the motor. The ten wires were inclosed in canvas from the controller to the beam. From the beam to the motors they were insulated.

Plaintiff introduced defendant's inspector, who testified that he inspected the car in question at about 9:30 a. m. on the day of the accident. All the wires were then in good condition. Neither this inspector nor the company's chief inspector was able to say what caused

the accident. There is also some proof to the effect that the wire might have been broken by the operation of the car, if, as a matter of fact, there was insufficient play of the wire. On the other hand, if there was too much play, the breaking might have been caused by friction. There was no evidence, however, tending to show that there was too much or too little play in the wire, or that the wire was in a worn condition.

Plaintiff insists that this is a case calling for the application of the doctrine of *res ipsa loquitur,* and having proved the injury and the cause thereof, the evidence for the defendant was not sufficient to overcome the presumption of negligence, but simply presented an issue for the jury.

While some courts take the position that the doctrine of *res ipsa loquitur* never applies in a case of master and servant, yet it is generally held that the doctrine does apply in such a case, but in a more restricted sense than in a case of carrier and passenger, because of the difference in the degree of care imposed, and in the character of defenses that may be made. Marsow v. Rutland R. Co., 211 N. Y., 203, 105 N. E., 206, 51 L. R. A. (N. S.), 1221; Byers v. Carnegie Steel Co., 159 Fed., 347, 16 L. R. A. (N. S.), 214. A master is not required to furnish the servant absolutely safe appliances with which to work. He discharges the full measure of his duty when he exercises ordinary care to furnish appliances which are reasonably safe. When, therefore, the servant seeks to recover for an injury growing out of defective appliances, the mere fact that a piece of machinery breaks is not of itself sufficient to make out a *prima facie* case. It must, therefore, appear that the master knew of the defective condition of the machinery, or could have known of it by the exercise of ordinary care. Therefore, it is generally held in a case of master and servant that the inference of negligence is deducible, not from the mere happening of the accident, but from the attending circumstances. Vissman v. Southern Ry. Co., 28 Ky. Law Rep., 429. In Sherman & Redfield on Negligence, Section 59, the rule, which has frequently been quoted by courts with approval, is stated as follows:

"It is not that in any case negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the acci-

dent occurred, contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer.''

The rule has also been stated in the following language:

''There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of the defendant, and the accident is such that, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part.'' Breen v. N. Y. C. & H. R. Co., 109 N. Y., 297, 4 A. S. R., 450, 16 N. E., 60; City of Corbin v. Benton, 151 Ky., 483.

Viewed in the light of these principles, what does plaintiff's evidence tend to establish? Nothing but the fact that the wire broke and that the wire, when inspected, was in proper condition. While there was proof to the effect that the accident might have happened by reason of too much slack in the wire, or too much friction, there was no proof that the accident did in fact result from either of these causes. It was not shown that the wire was worn, or that there was anything to indicate that it was in a defective condition. Not only was there an absence of such evidence, but plaintiff proved affirmatively that the wire was inspected that morning, and there was then nothing in its condition to indicate any probability of its breaking. Here, then, we have a case where plaintiff not only failed to prove, from the attendant circumstances, that the accident would not have happened had defendant exercised proper care, but actually proved that the wires were inspected during the morning preceding the accident, and they were then in proper condition. In other words, he not only failed to raise the presumption of negligence from the attendant circumstances, but actually proved that proper care was exercised. It necessarily follows that plaintiff failed to make out his case. The rule above announced is not in conflict with the doctrine laid down in Huddleston's Admr. v. Straight Creek Coal & Coke Co., 138 Ky., 506, where it was held that proof on the part of the master that the roof of the coal mine

was properly inspected just previous to the accident was not conclusive of the case, for the reason that the jury might take into consideration the physical conditions and attendant circumstances, and conclude therefrom that a proper inspection had not been made, notwithstanding the statements of defendant's witnesses to the contrary. In the case under consideration there is not a single circumstance from which it could be inferred that even a critical inspection of the wire in question would have revealed its defective condition.

It follows that the trial court properly directed a verdict in favor of the defendant.

Judgment affirmed.