# Louisville & Nashville Railroad Company v. Allen's Administrator.

(Decided March 20, 1917.)

## Appeal from Carroll Circuit Cour

1. Master and Servant—Negligence—Res Ipsa Loquitur.—The strict doctrine of res ipsa loquitur does not apply as between master and servant except in a modified form where the accident results from defective conditions which can be explained upon no reasonable hypothesis other than negligence, and circumstances appear independent of the accident itself indicating carelessness on the part of the defendant. In that event, there is sufficient proof to authorize the submission of the question of defendant's negligence to the jury.

2. Master and Servant—Negligence—Inspection.—Where the evidence for plaintiff is sufficient to show a negligent failure to inspect the thing causing the accident, the duty of the defendant to exercise ordinary care to inspect it is not conclusively shown by the testimony of witnesses who claim to have given the inspection, and the jury are not concluded by the testimony, but have a right to decide the question from all the facts and circumstances in the case, especially is this true where the inspection is not shown to have been made by any thorough and scientific test.

3. Railroads—Negligence in Maintaining Trestle—Question for Jury. —Where a locomotive engine to a train on a railroad fell through a trestle and there is testimony from which the jury might infer that it, or some parts of it, may have been loosed or weakened by the construction of a dump near to and by the side of it, and also that it, at times immediately prior to the accident, shook and jerked when trains were running over it, the evidence was sufficient to authorize a submission of the question of defendant's negligence in maintaining the trestle to the jury, and the presumption created by such testimony is not conclusively overcome by the testimony of inspectors claiming to have inspected the bridge shortly before the accident, but not showing the manner of the inspections nor that they were made by any thorough or scientific tests.

4. Master and Servant—Trial—Instructions.—Instructions examined and approved as being in acord with those sanctioned by the Supreme Court of the United States in suits brought under the Employers' Liability Act.

5. Damages—When Not Excessive.—The decedent was twenty-seven years of age, his expectation being more than thirty-two years. He was sober and industrious and was earning, as locomotive fireman, upon an average of $70.00 per month, his dependents being a wife twenty-three years of age and a daughter twenty months of age. Held, that a verdict for $16,000.00, divided be-

tween the widow and child in the proportion of one-third and two-thirds, is not excessive.

6. Trial—Argument of Counsel.—Counsel, in the argument of the case to the jury, should not go out of the record or discuss evidence not found therein, but may draw legitimate deductions from the evidence, and any remarks which do not go beyond this will not furnish grounds for interference with the verdict by this court. The remarks of counsel objected to in this case examined and found not to violate the above rule.

GEORGE D. WINSLOW and BENJAMIN D. WARFIELD for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is an appeal from a judgment of the Carroll circuit court in favor of the appellee (plaintiff) against the appellant (defendant) for the sum of $16,000.00, which he recovered for the alleged negligent destruction of the life of P. G. Allen. The suit was prosecuted for the use and benefit of his widow, who was, at the time, twenty-three years of age, and of his infant daughter, whose age at the time was twenty months, they being dependent upon him, and it was brought under the Federal Employers' Liability Act, the decedent being a locomotive fireman on one of the defendant's engines which, at the time of the accident resulting in his death, was engaged in interstate commerce. The decedent's death was caused by the giving way of bridge or trestle No. 10, located in Carroll county and supporting the track of the defendant in its line of railroad between Cincinnati, Ohio, and Louisville, Kentucky, causing the engine upon which the decedent was at work as fireman, to fall a distance of something like forty feet, followed by several cars and which produced his instant death. The cause of action stated in the original petition is, that the bridge which fell was in a defective condition; that it had negligently been suffered and permitted by defendant "to become weak, out of repair and unsafe and dangerous, defective and insufficient for the operation of trains over the same, and that by reason of said weakened, unsafe, dangerous and defective and insufficient condition," it broke down and caused the engine to fall to the ground, resulting in the decedent's death. It is, of course, alleged that the defendant knew of the condition of the bridge or could have known it by the

exercise of ordinary care, and that the decedent did not know it. By an amended petition, the additional causes of action are attempted to be relied upon, that the track at or near the approach to the bridge was in a defective condition through the negligence of the defendant; that the engine and cars composing the train were in a defective condition and unsafe, of which facts the defendant knew or could have known by the exercise of ordinary diligence; and it is furthermore alleged therein that the train, at the time, was negligently managed and operated, and that such facts, so stated in the amendment, were producing causes of the accident resulting in Allen's death.

The answer is a denial with a plea affirmatively showing the exercise of ordinary care on the part of the defendant in all the matters alleged as constituting its negligence, and avers that the falling of the bridge was due to an unavoidable accident and was one of the risks which the decedent assumed upon entering the employment of defendant. A reply completed the issue and the trial resulted as above indicated.

Numerous grounds for a new trial are incorporated in the motion made therefor, but there are urged before us, and we deem necessary to consider only the following: (1) Because the court erred in refusing to direct the jury to return a verdict for the defendant, made both at the close of the plaintiff's testimony, and at the close of all of the testimony; (2) error of the court in giving and refusing instructions to the jury; (3) the verdict is excessive; and, (4) improper argument of counsel in his closing address to the jury.

Defendant insists upon two grounds authorizing the sustaining of its motion for a peremptory instruction in its favor, which are: (a) The plaintiff's testimony failed to show facts sufficient to authorize the submission of the question of the defendant's negligence to the jury; and, (b) that if it should be mistaken in this that its testimony completely destroyed any presumption which might be indulged in plaintiff's favor. It, therefore, becomes necessary to make a brief review of the testimony introduced by plaintiff in support of the action.

The accident occurred at about 3 a. m., on September 25th, 1914, while the train, upon which decedent was employed, was going south from Cincinnati to Louisville.

There were three persons upon the engine at the time, they being the decedent, who was killed, the engineer, who was killed, and the head brakeman, who survived. The latter testified, in substance, that he was riding on the left or east side of the engine and at some point between 150 and 180 feet south of the north abutment of the bridge, the first thing he knew was that he heard some noise and the engine immediately went down; that there was nothing unusual happened immediately before it fell. That the train was traveling between twelve and fifteen miles per hour and going up grade and around a six degree curve, which is described by the bridge. He states that if any of the cars had become derailed, he could have discovered it by the effect it would have had upon the speed of the train. The bridge is shown to have been constructed in 1890, with iron or steel pillars or posts, and alternate expansions of thirty and sixty feet, with steel girders. Some time before the accident, defendant commenced near to, and west of the north end of the bridge construction work for the erection of a new one. This work, so far as completed, was the making of a fill west of the old bridge so that the span across the creek, including the trestle work, would be made much shorter. The dump had been constructed some considerable distance from the north abutment of the bridge and witnesses for plaintiff testified that the material with which it was constructed had in it many large rocks which would roll down under the old bridge as they would be emptied from a dump car on a false track constructed for that purpose. Plaintiff's testimony shows that these rocks, or at least some of them, weighed from 500 to 1,000 pounds, and would roll down the embankments of the newly constructed dump with great force. The evidence shows that the filling in under the old bridge from the rolling of dirt and rocks off of the dump was much greater at the north end of the bridge for the space of sixty feet, which remained standing after the accident, than it was further south from that point. However, the testimony shows that rocks and large lumps of dirt had rolled under the old bridge down as far as it gave way. In fact, this is not controverted by defendant's testimony. No witness, however, states that any rock or large lump of dirt struck any of the supports of the bridge or concrete in which they were fixed, or any of the rods bracing the bridge.

And it is argued by defendant that inasmuch as no witness saw any rock strike any part of the bridge that the evidence introduced by plaintiff upon this subject can have no probative force. We do not, however, take this view of the matter, for although the surface of the supports to the bridge and rods bracing it, is exceedingly small compared with the space between the bents, still it is perfectly possible that some of the rocks may have come in contact with some parts of the bridge or braces thereto. A witness, who had been an employee of the defendant, and had either constructed or assisted to construct the false work necessary to build the dump, testified, in addition to the rolling of rocks under the old bridge, that he, while at work a short while before the accident, observed the running of trains over the bridge and observed a noticeable shake or jerk of the bridge at a point about four rails south of its northern abutment, which covered that portion of it that fell. Another witness, in testifying upon this point, said: "Q. What had you noticed about the bridge? A. Well, it was shaky and I noticed it seemed to jerk; the trains would at certain points on that bridge. . . . . Q. Just tell us what you saw. A. Well, I know it seemed to jerk, something like that, and would jerk or flop over to the side; you have felt the motion when riding on a train." He states that he observed these conditions about three or four days before the accident. Still another witness, testifying upon the same point, said: "Q. Just tell the jury what you discovered or what you noticed in the bridge at that place by you when trains would pass over it. A. There was a jerk in the bridge, kind a something like that, when the caboose or engine would strike that one point." He also states that he made such observations some two or three days before the accident. This, in substance, was all the proof looking to the establishment of negligence on the part of the defendant, and it is seriously insisted that it is insufficient to authorize a submission of the question to the jury. It may be conceded at the outset that the *res ipsa loquitur* doctrine, strictly speaking, and confined strictly within the reasons calling for its application, does not prevail in controversies between master and servant. This is perhaps more particularly so as to its application by the federal courts. That doctrine is that negligence may be presumed or inferred from the mere hap-

pening of the accident, and that although the burden is upon the plaintiff to establish negligence, still, in certain cases where it is applicable, proof of the accident is sufficient for that purpose and shifts the burden upon the defendant to explain away the *prima facie* case made by the presumption. The reason why the rule embodied in the maxim is most generally held not to apply as between master and servant is that the mere happening of the accident does not indicate whether it resulted from any of the causes for which the master would be liable or from some cause that the servant assumed or for which he was responsible. The modern tendency, however, is that even as between master and servant where the thing which caused the injury is shown to be under the management or control of defendant or its servants, other than the one injured, and the accident is such as, in the ordinary course of things, does not happen, if those who have the management or control use proper care, slight circumstances pointing toward negligence on behalf of the defendant will authorize a submission of the question of its negligence to the jury. In other words, where the evidence shows that the accident is necessarily the result of defective conditions and can be explained upon no other reasonable hypothesis, circumstances indicating carelessness on the part of defendant will produce such a condition as to authorize the submission of the case to the jury. The case of Southern Ry. Co. v. Bennett, 233 U. S. 80, is one holding, as we construe it, to the rule just stated. The decedent was killed by the falling of the engine through a trestle which was on fire and had been considerably burned. There was evidence in that case that the trestle or some parts of it was perhaps unsound, and that the fire which ignited it had been caused by the dropping of coals from an engine ahead of the one which fell. There was also evidence to the effect that the train might have stopped before running upon the trestle if a proper lookout had been kept. Just as in the case we now have, there is evidence from which the jury might infer that the trestle was rendered unsafe because of large, heavy rocks rolling against some portion of it and loosening the foundation of the posts or some of the stay-rods, and also evidence that at or about the place where the engine fell, the bridge had been observed to shake as trains would pass

over it. In the Bennett case, the court, in disposing of the objection that the evidence introduced by plaintiff was insufficient to authorize a submission of the case to the jury, said: "The first complaint is against an instruction to the effect that, if a servant is injured through defective instrumentalities, it is *prima facie* evidence of the master's negligence and that the master 'assumes the burden' of showing that he exercised due care in furnishing them. Of course the burden of proving negligence in a strict sense is on the plaintiff. throughout, as was recognized and stated later in the charge. The phrase picked out for criticism did not controvert that proposition but merely expressed in an untechnical way that if the death was due to a defective instrumentality and no explanation was given, the plaintiff had sustained the burden. The instruction is criticized further as if the judge had said *res ipsa loquitur*— which would have been right or wrong according to the *res* referred to. The judge did not say that the fall of the engine was enough, but that proof of a defect in appliances which the company was bound to use, care to keep in order and which usually would be in order if due care was taken, was *prima facie* evidence of neglect. The instruction concerned conditions likely to have existed for some time (defective ash pan or damper on the engine and rotten wood likely to take fire), about which the company had better means of information than the plaintiff, and concerning which it offered precise evidence, which, however, did not satisfy the jury. We should not reverse the judgment on this ground, even if an objection was called at the time."

That case was not submitted to the jury solely upon the presumption arising from the accident, but the instruction so submitting it "concerned conditions likely to have existed for some time, . . . . about which the company had better means of information than the decedent." The evidence producing the circumstances looking to the negligence of the defendant in the case at bar, and which we have previously related, had existed for some time and they were matters "about which the company had better means of information than the decedent."

Bearing somewhat upon this question are the federal cases of Copper River & Northwestern Ry. Co. v. Reed, 211 Fed. Rep. 111; and Same v. Henry, Idem 459, and

the case of Chicago, Rock Island & Pacific R. R. Co. v. Devine, 239 U. S. 52. In the case of Texas & Pacific Ry. Co. v. Barrett, 160 U. S. 617, rendered, however, before the enactment of the Employers' Liability Act, the cause of the accident was the explosion of a boiler nearby the place where the injured person was working as an employee of the railroad company, and the only evidence of negligence was the fact of the explosion and that some time before some bolt or bolts were observed to be loose, and the court held that these facts were sufficient to justify a verdict in favor of the plaintiff. The looseness of the bolts in that case was no more potent in establishing negligence than the shaking of the bridge or the possible rolling of stones against it in the instant case, and so we conclude that under the federal rule, as announced by the cases, *supra,* the facts of this case are amply sufficient to justify the action of the court in submitting it to the jury.

The opinions of this court are in line with the rule just found to prevail in the federal courts, as will be seen from the very recent case of Baltimore & Ohio R. R. Co. v. Smith, 169 Ky. 593. That suit was brought, as is this one, under the Federal Employers' Liability Act, and the negligence complained of was a defective handhold on a car which the plaintiff, while in the line of his duty, attempted to use in getting upon the train while it was moving. It gave way, causing him to fall and sustain the injuries for which he sued. The usual contradiction is found in the evidence in that case as to whether the giving way of the handhold was the cause of plaintiff's injuries, but the jury found that it was, and returned a verdict against the defendant and it appealed to this court.

Upholding the action of the trial court in submitting the cause to the jury, quoting from the case of Thomas v. National Concrete Construction Co., 166 Ky. 512, we said: "While some courts take the position that the doctrine of *res ipsa loquitur* never applies in a case of master and servant, yet it is generally held that the doctrine does apply in such a case, but in a more restricted sense than in a case of carrier and passenger, because of the difference in the degree of care imposed and in the character of defenses that may be made. . . . . A master is not required to furnish the servant absolutely safe appliances with which to work. He dis-

charges the full measure of his duty when he exercises ordinary care to furnish appliances which are reasonably safe. When, therefore, the servant seeks to recover for an injury growing out of defective appliances, the mere fact that a piece of machinery breaks is not of itself sufficient to make out a *prima facie* case. It must, therefore, appear that the master knew of the defective condition of the machinery, or could have known of it by the exercise of ordinary care. Therefore, it is generally held in a case of master and servant that the inference of negligence is deducible, not from the mere happening of the accident, but from the attending circumstances. . . . . In Sherman & Redfield on Negligence, section 59, the rule, which has frequently been quoted by courts with approval, is stated as follows: 'It is not that in any case negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred, contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer.'

"The rule has also been stated in the following language: 'There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of the defendant, and the accident is such that, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation of the defendant, afford sufficient evidence that the accident arose from want of care on its part.' ''

The application of the modified rule under circumstances similar to what we have here is further elaborated upon in that opinion, but we do not deem it necessary to take further excerpts therefrom. It, and the cases to which it refers, fully accords with the action of the trial court in refusing to give the peremptory instruction insisted upon, at the close of plaintiff's testimony. The case of Sutton's Admr. v. L. & N. R. R. Co., 168 Ky. 81, and similar ones relied on by defendant do not fit the facts of this case. There the decedent was found dead at a place indicating that he might have

been killed by a train of defendant, but with no testimony to prove the cause of his death. There was nothing to show what caused his death, or that it was produced by anything under the control of defendant, either through negligent operation or because of defects from failure to repair. Clearly that class of cases can have no application here.

It is claimed, however, as shown in subdivision (b) that defendant's testimony fully satisfied the requirement of the law in removing all doubt as to its guilt of any negligence. It is true that it offered testimony to explain that introduced by the plaintiff as to the jerking or shaking of the bridge, by showing that this was due to the curvature of the track, and it also introduced testimony to the effect that there were no rocks used in the construction of the dump of the size and dimensions given by plaintiff's witnesses, but this testimony raised only a contradiction in the evidence and is not conclusive upon those issues. Defendant, furthermore, introduced a number of witnesses showing that the bridge had been inspected a short time before the accident and by some of them, as they testified, on the day before it happened. But one, or perhaps two, of the witnesses, attempted to state facts showing anything like a thorough inspection. Many of them, and, in fact, all, inspected by observation only. We do not find in the testimony the application of any tests which would be calculated to develop any impairment of the bridge, except that one, or perhaps two, witnesses climbed through the braces under the bridge and said that if they found anything loose it would have been their duty to tighten it. Of course, we do not presume that they did not make such inspection as a close observation would reveal. But, however this may be, the jury were not compelled to accept as true the statements of those who claim to have made an inspection of the bridge. This has been determined a number of times by this court, particularly in the case of Huddleston's Admr. v. Straight Creek Coal & Coke Co., 138 Ky. 506. The deceased in that case was killed by the falling of slate from the roof and side of an entry in the mine. This was charged to have been caused by the negligence of defendant, which it denied, and upon the trial it produced witnesses to prove that they had very recently before the accident thoroughly inspected the roof at the

place where the accident happened, and subjected it to all reasonable tests, thereby fully complying with the demands of the exercise of ordinary care, but that they failed to discover its dangerous condition. One of the inspectors who testified as to the inspection was named Elswick. The defendant there, as here, contended that the undisputed testimony as to the inspection was sufficient to authorize the court to direct a verdict in its favor. That contention was denied by this court, and in doing so, it said: "But, notwithstanding the inspection and the removal of the loose slate on Thursday afternoon, the fact remains that early the next morning slate did fall from the place inspected, and so the question comes up: must the statements of Elswick be accepted as conclusive of the fact that the company fully discharged its duty to keep the mine in a reasonably safe condition, or was the question whether or not it performed this duty one for the jury to determine from all the facts and circumstances in the case? It can readily be seen that this is a most important question, not only as it affects the case before us, but as it will affect other similar cases in which a recovery is sought against the master for the destruction of the life of the servant based on the failure of the master to furnish the servant reasonably safe places or appliances. If the principle contended for by counsel for the company is the correct law, then in every case involving a question like this the master will be absolved from liability if he can prove that the place or appliance was examined and inspected shortly before the injury and found to be reasonably safe for the use of the servant, and there is no evidence to disprove that the inspection was made, or to contradict the evidence of those who say that in making it they exercised ordinary care."

Other cases from this court will be found cited in that opinion sustaining the rule, and we are convinced that these authorities from this court settle the point adversely to defendant's contention. The rule with us is that a peremptory instruction is not authorized, unless it appears that, after admitting the testimony offered and every reasonable inference therefrom, there exist no sufficient evidence to support the cause of action or defense. Helton's Admr. v. Chesapeake & O. Ry. Co., 157 Ky. 380; Security Mut. Life Ins. Co. v. Little, Idem. 276; Kentucky Traction & Terminal Co. v. Wilson, 165

Ky. 123; Nelson v. Black Diamond Mining Co., 167 Ky. 676; Chicago, St. L. & N. O. R. R. Co. v. Armstrong's Admr., 168 Ky. 104, and Cin., N. O. & T. P. Ry. Co. v. Smith's Admr., Idem. 185. It results, therefore, that the court-did not err in declining defendant's motion for a peremptory instruction.

Considering the second point raised, it is sufficient to say that the instruction upon the measure of damages, and of which complaint is made, is a copy of the one given in the case of Norfolk & Western Ry. Co. v. Holbrook, 235 U. S. 625, and is approved in the opinion in that case, as it had theretofore been in the cases of Michigan Central R. R. Co. v. Vreeland, 227 U. S. 259; American R. R. of Porto Rico v. Didricksen, 227 U. S. 145; Gulf, Colorado, &c., Ry. Co. v. McGinnis, 228 U. S. 173, and North Carolina R. R. v. Zachary, 232 U. S. 248. It is, therefore, unnecessary to give further consideration to the objection to that instruction. In this connection, it might be well to say that it is insisted that the court erred in submitting to the jury the negligence of the defendant, if any, in maintaining the bridge, because there was some evidence tending to show that the train was derailed, thereby causing the bridge to fall, and that if so the fall was not produced by any inherent defect in the bridge. The evidence upon this point, however, is very shadowy. It consists in the observation of marks which some of the witnesses saw on cross ties found upon the ground, after the extinguishment of the fire which had been started by the falling of the engine and marks on what is called guide rails by the side of the steel rails upon which the trains ran. It is not shown that these marks were fresh or that they were necessarily made by wheels of any part of the train. It was merely supposed to be so by the witnesses who testified to it. This point is urged because it is insisted that if the train was derailed and it produced the fall of the bridge, no recovery can be had, as the derailment, if it occurred, is not shown to have been produced by any negligence of the defendant. But when we look to the evidence we not only find it to be non-convincing on this point of the derailment of the train as we have shown, but no one upon the train testified to any fact indicating any derailment of any portion of it. Plaintiff's witness, Allen, who was head brakeman and who was upon the engine, states no fact from which it might be con-

cluded that any derailment occurred, and we do not think it was prejudicial for the court to submit to the jury only the question of negligence relied upon in the original petition, which is the defective condition of the bridge.

The next complaint in regard to instructions is that the court refused instruction "A," offered by defendant, which, in substance, told the jury that the mere happening of an accident which injures an employee raises no presumption of negligence on the part of the employer, and that unless the jury should believe in this case from a preponderance of the evidence that the fall of the bridge was due to the making of the fill and that defendant failed to exercise ordinary care in making it, that then the jury should find for the defendant. The offered instruction is subject to several objections. It assumes that there was no evidence of negligence except that afforded by the accident itself, which we have seen in a former part of this opinion is untrue. Another objection to it is that it requires the jury to believe the statements therein incorporated "from a preponderance of the evidence," which statement in an instruction has often been condemned by this court, and lastly, it predicates the right of recovery, if any, upon the negligence of the defendant in making the fill, or dump, for its contemplated new bridge when clearly it would be liable if the defective condition of the bridge, if it was in such condition, was the result of negligence in any other particular, besides the making of the fill. We, therefore, conclude that the second ground urged for reversal is not well taken.

Upon the third ground, that the verdict is excessive, but little need be said. The decedent, in the Bennett case, *supra,* was earning only $900.00 a year. His expectation of life was about thirty years. The judgment was for $20,000.00, and the court affirmed it, although it was earnestly insisted that the verdict was excessive. In the case of L. & N. Ry. Co. v. Holloway's Admr., 168 Ky. 262, the judgment was for $25,000.00. The decedent was thirty-four years of age but earning about $200.00 per month. His expectation was about twenty-eight years. The same objection was made to the verdict in that case as is made to the one here. In that case there was no child, and this court affirmed the judgment quoting with approval from the Bennett case, *supra,* as

follows: "The argument is this: The deceased was not making more than $900.00 a year and the only visible ground of increase was the possibility that he might be promoted from fireman to engineer, with what pay was not shown. He could not have given more than $700.00 a year to his family. His expectation of life was about thirty years by the tables of mortality. Therefore at the legal rate of interest the income from $10,000.00 for thirty years was all that the plaintiff was entitled to, whereas she was given the principal of $20,000.00 out and out. It may be admitted that if it were true that the excess appeared as matter of law; that if, for instance, the statute fixed a maximum and the verdict exceeded it, a question might arise for this court. But a case of mere excess upon the evidence is a matter to be dealt with by the trial court."

The instruction authorized the apportionment of the damages, which was done in the ratio of one-third to the widow of the decedent, and two-thirds to the infant child. It is claimed that there was no evidence of the amount of benefits which the dependents, for whose benefit the suit was brought, were calculated to receive, had the decedent lived, but we do not so interpret the evidence. In fact, if there was nothing shown upon the subject except testimony showing the relationship, a presumption of dependency would arise, and expectation of benefits follow. The decedent and his wife were upon the most affectionate terms. He was sober and industrious; had an expectancy of over thirty-two years and was earning upon an average of something like $70.00 per month. And when we take into consideration the right of the jury to award damages to the infant daughter for the loss of care, attention, instruction, training and advice, which she had reasonable expectation of receiving from her father had he not been killed, we are convinced that the verdict upon the whole is not excessive. Moreover, this is a question peculiarly within the province of the jury, to be determined from the facts of each case and we are convinced that the defendant was not prejudiced by the size of the verdict.

In regard to the argument of counsel complained of, we have carefully considered his remarks as shown by the bill of evidence. It would make this opinion too long to notice them seriatim. The chief complaint seems to be directed toward this language: "That every in-

jury to a person or property is the result of negligence somewhere in somebody, unless it be a wilful act or an act of Providence.'' We fully realize that counsel in arguing a case should confine himself to the testimony introduced or reasonable deductions to be drawn there-from. That he should say nothing unless authorized by the record which would be calculated to induce the jury to return a verdict not the result of its fair and unbiased consideration of the testimony heard and the instructions given. We are, furthermore, aware of the instances in which arguments of counsel have been condemned, even to the extent of reversing the judgment, based upon a verdict which the complained of argument wrongfully induced, but we are unable to see any merit in the objection to the language quoted, from plaintiff's counsel. In fact, he stated therein an undeniable truth. While it might have been his purpose to show that the negligence which produced the particular accident complained of in this case was that of the defendant, yet his language was broad enough to include the production of it by negligence of the decedent. Moreover, if there was no negligence as a producing cause for the accident, the remaining part of the statement must be true that it was caused by some wilful act or by an act of Providence. We do not find any of the other statements complained of any more objectionable than the one we have considered, and, therefore, see nothing in the complaint, as to the argument, which would, in the least, authorize us to interfere with the verdict of the jury.

Upon the whole, we fail to discover any error in the trial justifying a reversal of the judgment and it is, therefore, affirmed.