## Davis, Agent, et al. v. Briggs.

(Decided December 7, 1923.)

### Appeal from Lee Circuit Court.

1. Master and Servant—Assumption of Risk Contractual Obligation.
—Assumption of risk is a contractual obligation read into a contract of employment, whether stipulated or not; the employee assuming the ordinary and usual risks growing out of the employment.

2. Master and Servant—Assumption of Risk Shifted to Employer by Complaining of Danger.—If during the progress of work the employee has knowledge or notice of a defect or danger he must encounter in his work, he may shift the assumption of risk to his employer by complaining of such defect or danger, and exacting from the employer a promise to repair or take steps to obviate the danger.

3. Master and Servant—Fireman Held to have Assumed Risk of Operating Defective Water Crane.—A railroad fireman, having full knowledge of the manner in which a water crane worked, and how fire hook used by him worked in pulling around the spout, and the danger of operating the crane by reason of its condition, assumed the risk of injury therefrom, where he made no complaint of any kind, and no promise was made to him to have the crane repaired, or the fire hook replaced by a more suitable tool.

4. Master and Servant—Order by Engineer to Operate Water Crane Held Not Order Shifting Assumption of Risk to Master.—Where it was regular duty of injured fireman to take water into tank, the fact that on the occasion of his injury, while operating a defective water crane, it so happened that he was given a specific direction by the engineer to take water, could not have the effect to release the fireman of assumption of risk; the direction of the engineer being equivalent only to a suggestion that the engine needed water.

B. D. WARFIELD, HUNT, NORTHCUTT & BUSH, ROSE & STAMPER and ASHBY M. WARREN, for appellant.

C. E. TYREE and FRANKLIN, TALBOTT & CHAPMAN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

On the 7th of June, 1918, while the Director General of Railroads was operating the Louisville & Nashville Railroad, appellee, a fireman on one of the engines, while putting water into the tank of his engine at Maloney, Ky.,

lost his balance and fell from the tender of the engine to the ground, a distance of about nine feet, whereby he was severely injured.

In this suit for damages therefor, on the trial a verdict for $15,000.00 in his favor was returned by the jury upon which judgment was entered; a motion for a new trial having been overruled, this appeal is prosecuted by the Director General.

Appellee at the time of the injury was the fireman on a freight train running from Beattyville, Ky., via Maloney to Lexington, Ky., and had been engaged on that train at the time of the injury for eight or nine months. The defendant operated at Maloney what is known as a water crane stationed near to its tracks which was used in furnishing water to the railroad engines; the water crane consisted of a vertical pipe, and there was attached to it a horizontal, movable spout. This spout when not in use was parallel with the railroad track, but was so constructed that it could be pulled around so that the mouth of the spout when so moved would be over the man-hole in the engine tank so that the same might be filled with water.

The negligence relied on is the failure of defendant to furnish tools and appliances reasonably suitable and safe for use in the work required of plaintiff, and that the water crane was not properly constructed, or was not in proper repair, and his injuries are alleged to have been the direct and proximate result of such negligence.

The answer traversed the material averments of the petition, and in addition pleaded assumption of risk, knowledge of the defect, if any, by the plaintiff, and contributory negligence. These affirmative defenses were put in issue by a reply.

The fire-hook is described as a round piece of iron about one-half to three-fourths of an inch in diameter, with a handle on one end and two hooks or prongs at the other end, and ranges in length from seven to eleven feet. It appears that at the end of the lever there is a small handle into which the prongs on the end of the fire-hook might be inserted so as to pull the water spout around towards the tender of the engine.

In the light of our conclusion that the trial court erred in not sustaining appellant's motion for a directed verdict because the evidence shows plaintiff assumed the risk

which resulted in his injury, it will be necessary only to refer to plaintiff's own evidence.

That evidence is that he was about 32 years of age and had had approximately six years' experience as a railroad fireman, about twenty months of which had been spent on runs passing Maloney, and during which time he had used the water crane at that place, although he had used same for only about eight months on the particular run in which he was engaged when injured. It was a part of the duties of the fireman to put water into the engine, although he says upon the particular occasion in question he in addition had specific orders from the engineer so to do. He says he had operated the particular crane a great many times before and knew how it worked; that it worked different at different times, and not always in the same way; that at times it would pull hard half way around and then get easy, and that sometimes it took all his strength to get it started and then it would come with a rush; that sometimes it would pull around steadily all the way, and at others after you got it started around and it would come half way, "you would have to jump away to keep from being hit by it."

He described what occurred on the occasion when he was injured, as follows:

> "When I got the hook over the frame to pull it around it was hard to start, and when it started it come with such a rush it got away from the hook, and when it got away from the hook I had my whole weight on it, and when it slipped away from the hook it got away from me and it overbalanced me."

He says he passed by this water station regularly from September, 1917, to June 7, 1918, and took water there nearly every day, and that he had noticed during that time how the water crane worked, and repeats that you could not tell how it was going to work, and that the water crane had given him trouble since he first began to work on that line, and that for all the twenty months he was running by that station he used the fire hook to pull the crane around.

He admits in his evidence he was never provided with any instrument other than the fire-hook with which to reach out and pull the crane around, and he admits he at the time of his injury was standing on the coal on top of the tank, and that it was slippery, and furnished an un-steady footing. He likewise says that he had known for

some time the water crane was not working properly, but that it did not look dangerous, and in that connection adds:

"I had taken water there and seen others take water there, and I thought I could again."

Again, he says the crane was dangerous when it came around hard—meaning presumably when it required great force to pull it around—and that upon previous occasions it had come around hard when he had worked it, and that he had upon such occasions to jump out of the way, and that during the last eight months before his injury it had so worked on frequent occasions.

Manifestly appellee had full knowledge of the manner in which the crane worked, and how the fire-hook worked in pulling around the spout, and yet there is neither allegation nor evidence that he made complaint of any kind or nature of either, or that any promise was made to him to have the crane repaired or the fire-hook replaced by a more suitable tool.

The mechanism of the crane was concealed; and there is no evidence from which it might be assumed it was either wrongfully constructed in the first place, or that it was out of repair, unless it be the general statements of appellee as to how it worked as above set out. If, therefore, it be assumed these general statements of how the crane worked may be treated as evidence that it either was improperly constructed or that it was out of repair, which is not decided, and assuming the fire-hook was not a suitable instrument with which to pull around the water spout, yet it is apparent from the appellee's own evidence that he for a long time had had notice of these things, had made no complaint of either the working of the water crane or the insufficiency of the fire-hook, and had not been promised or assured either that the crane would be repaired or that he would be furnished with a more suitable appliance with which to operate it.

The assumption of risk is a contractual obligation; whether so stipulated or not the law reads into the contract of employment the assumption by the employe of the ordinary and usual risks growing out of the employment. If, however, during the progress of the work the employe has knowledge or notice of a danger he must encounter in his work, whether it be a defect or danger in the place or in the tools or appliances with which he works, he may shift the assumption of risk to his employer by complaining of such defect or danger, and ex-

acting from the employer a promise to repair or take steps to obviate the danger; and if the employer fails within a reasonable time to carry out such promise, and the employe in reliance thereon continues to work at the dangerous place or with the defective appliance, and is injured, then the employer will be treated as having, during that period, himself assumed the risk. But where the employe with such knowledge or notice continues to work at the dangerous place or with the defective appliance, without complaint or promise of repair, his contractual obligation still rests upon him, and he himself assumes the risk of working at the unsafe place or with the defective appliance.

Corbin Ice and Carbonating Co. v. Ellison, 169 Ky. 250; Burch v. Louisville Car Wheel, etc. Co., 146 Ky. 272; Robinson-Norton Co. v. LeGrande, 151 Ky. 188; Avery & Sons v. Lung, 32 R. 702; C., N. O. & T. P. R. R. Co. v. Goldston, 156 Ky. 410; Glenn v. C., N. O. & T. P. R. R. Co., 157 Ky. 453; Thompson's Law of Negligence, vol. 4, section 4671; Turner, Day & Woolworth Co. v. Allen, 183 Ky. 531.

The exceptions to this rule discussed in American Tobacco Co. v. Adams, 137 Ky. 414, and Consolidation Coal Co. v. Hamilton, 170 Ky. 393, are not involved here.

But counsel insist the facts in evidence bring this case within the exception to the general rule that where the servant acts in obedience to the direct order of his superior and the risk in doing the work is not so imminent that a person of ordinary prudence would refuse to take it, the risk involved is then shifted to and rests upon the employer. But we cannot assent to this; the evidence shows without contradiction that it was the regular duty of the fireman to take water into the tank, and the fact that on the occasion of his injury it so happened that he was given a specific direction by the engineer to take water, could not have the effect to release appellee of the assumption of risk. The direction of the engineer was equivalent only to a suggestion to the fireman that the engine needed water, and that he in the exercise of his ordinary and customary duties should see that it was filled. There was neither direct nor inferred assurance of safety; it amounted only to a suggestion to appellee he should perform his customary duties in taking water.

If at the time of such direction, however, appellee had complained of the danger incident to the work, and had

directed attention of his superior either to the manner in which the crane had been working as evidence of its unsafe condition, or had called attention to the fact, if it was a fact, that the fire-hook was an unsafe appliance with which to operate the crane, and then his superior had assured him of the safety of these things, or had directed him, even though they were unsafe, to proceed with his work, and he had then been injured, the exception to the rule might be applicable. But here there was no complaint; the fireman had operated the crane many times, and the engineer never had; the fireman knew all there was to know about how the crane operated and how the appliance worked, and the engineer knew comparatively little.

The facts furnish no reason for the application of the exception.

The question is not wholly new in this state. This court in the case of L. & N. R. R. Co. v. Stanfill, 32 R. 1043, in response to such a contention, said:

> "A general order from a foreman to proceed with the usual business of the day will not impose upon the master any greater responsibility than he ordinarily incurs. . . . If the conductor had been present at the time the coupling was made, and Stanfill had objected to making it, and the conductor had directed him to make it, a different question would be presented; but here the sum of the evidence is simply that the conductor told the brakeman to get up and get the train ready to leave, and Stanfill, in obeying this order, went out and undertook to make this coupling."

This court likewise in the case of Davis v. C. & O. R. R. Co., 166 Ky. 490, in response to a similar argument, said:

> "So, in no event was the order anything more than a general order to appellant to do what was one of the ordinary duties of his employment. The order did not, in fact or as a matter of law, impose any greater responsibility upon him than he would otherwise have incurred."

The reason of such exception is that an employe will not be charged with the consequences when the safety of the place or appliance has been called in question, and notwithstanding this, his superior directs him to proceed,

thereby in effect either assuring him of its safety or assuming the responsibility if he is injured.

To apply this exception under the facts in evidence would be wholly subversive of its real purpose.

The question of a peremptory instruction is the only one considered, and all other questions are expressly reserved.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.

Whole court sitting.