## Louisville & Nashville Railroad Company v. Mannin.

(Decided December 17, 1926.)

### Appeal from Wolfe Circuit Court.

Master and Servant—Evidence of Railroad's Negligence as to Roundhouse Helper Falling off Locomotive Held Insufficient for Jury.—In action for injuries received by electrical helper falling off locomotive while in roundhouse allegedly due to escaping steam, evidence of railroad's negligence held insufficient for jury.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, A. F. BYRD, G. S. LANDRUM, and HUNT, NORTHCUTT & BUSH, for appellant.

E. C. HYDEN for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing

Appellee recovered judgment for $25,000.00 in the Wolfe circuit court in an action against appellant for injuries alleged to have been received by him as a result of its negligence while he was employed by it as electrical helper in its roundhouse at Hazard, Kentucky.

Appellant relies on a number of grounds for reversal but as we have concluded that the trial court should have peremptorily instructed the jury to find for it, it will not be necessary to consider or determine the other questions discussed in appellant's brief.

It was appellee's duty as an electrical helper to assist in keeping the electrical appliances attached to apppellant's engines in repair. At the time he claims to have re-

ceived the injuries he was on top of one of appellant's engines oiling the generator cups which are located on the rear part of the boiler and immediately in front of the cab. Appellee testified that while thus engaged steam blew up in his face blinding him and being unable to locate the ladder on the side of the engine, he fell feet foremost, the fall resulting in injuries that are serious and permanent. He continued to work two or three weeks but on March 30, 1923 he was taken ill while at the roundhouse and was removed to a hospital, the accident having occurred on the night of March 15, 1923.

On April 10, 1923 he was examined by Dr. Wilgus Bach who testified that appellee gave a history of dysentery and that a week later he gave a history of falling from one of appellant's engines; that appellee said he had been dizzy; that his head was swimming when he fell and that at the time the engine was standing still. Dr. Bach testified that in his opinion appellee was then suffering from bacillary dysentery. Appellee denied making any of these statements to Dr. Bach.

It is appellee's theory that one of appellant's employees either negligently started the engine without giving him notice and caused him to fall or, in preparing to start the engine, negligently caused steam to be emitted therefrom blinding appellee and thus causing him to fall. Appellee at no time testified that the engine had moved before he fell but in answer to a number of questions said that the engine moved immediately after he fell. On direct examination he was asked:

"Q. Where did this steam come from, if you know, that came out there? A. It come right up in my face, I reckon it come—I don't know where it come from without it come from the boiler, come in my face, the first I seen of it."

And on cross-examination he was asked the following questions:

"Q. Do you say now that the engine moved before you got off of it? A. By the time I hit the floor walk or what you might call it, by the time I hit there, I will say and looked around, the engine was going.

"Q. But did it move before you got off or fell off? A. I won't state about that, wouldn't be positive about that at all.

"Q. You never have stated, either in your testimony to Mr. Hyden or in your testimony on the other trial, you never have stated that the engine moved before you fell off, have you, A. I told him I wouldn't be positive about it.

"Q. Did you tell Mr. Hyden you wouldn't be positive about it, A. I said I didn't know.

"Q. It was not the movement of the engine that made you fall off, was it? A. It was that steam blinded me.

"Q. I asked you if it was the movement of the engine that made you fall off? A. I won't state about that.

"Q. How? A. I won't state about that to be positive, it moved about that moment."

There was no other witness to the accident and there is no evidence tending to show that appellee's fall was caused by any movement of the engine. Any negligence, therefore, on the part of appellant on which appellee can rely for a recovery is confined to the escape of the steam.

The proof disclosed that the only places from which steam in appreciable quantities could escape from the top of the engine were from the safety or pop-off valve, which is located about three feet forward from the cab and between which and the cab appellee was working and from the valve controlling the whistle. The safety or pop-off valve is a mechanical appliance attached to all engines which operates automatically and permits steam to escape when a certain pressure is reached and thus prevents an explosion of the boiler. Appellee testified that the whistle was not blown. It is not shown that in preparing to start the engine steam might be caused to escape from other places that would reach appellee at the place he claimed to be working. Appellee invokes the doctrine of *res ipsa loquitur*.

The rule, *res ipsa loquitur,* in its strict sense rests upon common experience that an accident of the kind in question does not occur in the absence of negligence. In discussing the application of the rule to controversies between master and servant, in Louisville & Nashville Railroad Company v. Allen's Administrator, 174 Ky. 736, 192 S. W. 863, we said:

"It may be conceded at the outset that the *res ipsa loquitur* doctrine, strictly speaking and confined

strictly within the reasons calling for its application, does not prevail in controversies between master and servant. This is perhaps more particularly so as to its application by the federal courts. That doctrine is that negligence may be presumed or inferred from the mere happening of the accident, and that al·· though the burden is upon the plaintiff to establish negligence, still, in certain cases where it is applicable, proof of the accident is sufficient for that purpose and shifts the burden upon the defendant to explain away the *prima facie* case made by the presumption. The reason why the rule embodied in the maxim is most generally held not to apply as between master and servant is that the mere happening of the accident does not indicate whether it resulted from any of the causes for which the master would be liable or from some cause that the servant assumed or for which he was responsible. The modern tendency, however, is that even as between master and servant where the thing which caused the injury is shown to be under. the management or control of defendant or its servants, other than the one injured, and the accident is such as, in the ordinary course of things, does not happen, if those who have the management or control use proper care, slight circumstances pointing toward negligence on behalf of the defendant will authorize a submission of the question of its negligence to the jury. In other words, where the evidence shows that the accident is necessarily the result of defective conditions and can be explained upon no other reasonable hypothesis, circumstances indicating carelessness on the part of defendant will produce such a condition, as to authorize the submission of the case to the jury.''

And in Staley v. Wehmeier, 187 Ky. 445, 219 S. W. 408 we said:

"A servant is not entitled to have his case submitted to the jury unless he introduces, in addition to the fact of the occurrence of the accident, some specific testimony which fairly tends to show that the employer was guilty of negligence. In the absence of such testimony the case must obviously falls within the principle that the action can not be maintained where plaintiff's evidence is equally con-

sistent with the absence or with the existence of negligence. It is not enough that the servant show he has sustained the injury; he must go further and show some specific act of negligence. The establishment of a judicial connection between the master's negligence and the injury being one of the essential prerequisites to the maintenance of an action, the burden of proving there was such a connection rests on the servant.''

The record in this case does not disclose such attending circumstances as would authorize the application of the doctrine of *res ipsa loquitur* under the rule announced in Louisville & Nashvville Railroad Company v. Allen's Administrator, *supra*. The appellee did not attribute his fall to any defect in the engine but to the escaping steam which blinded him, and he insists the presumption should be indulged that the steam was caused to escape by negligence imputable to the appellant. The escape of the steam complained of by appellee might have been caused by a human agency, by a defect in the engine or by physical law, and appellee's evidence is equally consistent with the absence or with the existence of negligence. If the steam escaped because of a defect in the engine it was necessary for the appellee to plead and prove that appellant knew, or by the exercise of ordinary care could have known, of the defect, and that appellee did not know it or it was not plainly observable. Idol v. L. & N. R. Co., 203 Ky. 81, 261, S. W. 878; Gabbard v. L. & N. R. Co., 206 Ky. 474, 267 S. W. 558; Lile v. Louisville Railway Co., 161 Ky. 347, 170 S. W. 936. Appellee neither pleaded nor proved such facts as would entitle him to rely on the ''unsafe place'' doctrine.

It will thus be seen that his injury might have resulted from any one of several causes, some of them not due to any negligence of appellant, and in order to determine the proximate cause of the accident it would be necessary to indulge in speculation and guesswork. In Gregory's Admrx. v. Director General, 195 Ky. 289, 242 S. W. 373, in discussing the rule applicable where tangible evidence is lacking from which it may be fairly said what caused the accident, we said:

''If the accident occurred in the manner surmised by counsel, or if the evidence was of such a character as to leave no reasonable room for any

other conclusion by the jury, then the court was in error in sustaining the motion for a directed verdict. But, unfortunately for plaintiff and the others for whose benefit she sues, this court, following the general rule upon the subject, has consistently held that in order to sustain an action for damages in this character of case there must exist negligence, injury, and a causal connection between the negligence and the injury. In other words, the damage sued for must be the proximate result of the negligence producing the injury. Under that rule it has been constantly reiterated that, though the negligence was proven or conceded, yet if there was a failure to show by evidence sufficient to authorize a jury to find that the *consequent damage* was the result of that negligence, a nonsuit should be directed, since rights of litigants may not be guessed away by either courts or juries.

"Consequently we have held that where under all the evidence the injury could as well be attributed to the *negligence* of defendant, or to some *other cause* independent of that negligence and for which defendant would not be responsible, the case should not be submitted to the jury."

Giving the fullest effect to the evidence introduced for appellee it can not be said to show with any degree of certainty what was the cause of his injury, and appellant's motion for a directed verdict should, therefore, have been sustained.

Judgment reversed and cause remanded for further proceedings consistent herewith.