## Green v. Pennsylvania Railroad Company.

(Decided June 27, 1928.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Negligence.—Negligence of defendant is not presumed but in tort actions must be proven.

2. Master and Servant.—In lineman's action for personal injuries received when he fell from top of pole which he had been ordered to remove when screw which his superior had connected came out of the turnbuckle, and a wire jerked lineman from the pole, causing him to fall to the ground, issue of employer's negligence held insufficient for jury.

3. Master and Servant.—Where the risk is naturally incident to the business, the master does not become the guardian of the employee, but the latter must take notice of the ordinary risks of nature and of matters and things that transpire before his eyes.

4. Master and Servant.—Lineman engaged in removing decayed pole, who had been engaged in such work for over a year, and was fully cognizant of the hazards thereof, and made no request for a safety belt, assumed the risk of injury.

J. S. LUSCHER and JAMES R. PARR for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Joseph M. Green sued the Pennsylvania Railroad Company for personal injuries received while a lineman in the employment of that company, alleging that his injuries were caused by the defendant failing to furnish him with a safe place to work and in furnishing him with defective and insufficient equipment and appliances with which to perform his labor. At the close of appellant's evidence, a directed verdict was returned in favor of defendant, and plaintiff appeals. Further reference to the parties will be as plaintiff and defendant respectively.

The facts as developed in plaintiff's evidence are these: The defendant maintains crossing gates at Fourteenth and Magazine streets in the city of Louisville. These gates are supported by posts placed in the edge of the sidewalk and near the tracks, at the corners of the street intersections. At the top of each post is an iron cross-arm in the shape of the letter X, and a tight wire runs from each of these cross-arms to the cross-arm on

the opposite post, and the gates are raised and lowered by means of these wires. In order to control the slack in the wire, there is inserted between it and the cross-arm a metal link some six inches in length, called a "turnbuckle," with threads through each end so cut as to receive a right-and-left screw. One of the posts in question had become decayed, and, on September 3, 1926, Mr. Wessell, the company's signal maintainer, in which department plaintiff was employed, directed him to assist in removing the decayed post. Mr. Wessell climbed the pole, disconected the wire from the turnbuckle, and replaced the screw in the end of it. After the post had been spliced and replaced, he directed appellant to climb it and refasten the wire. When he reached the cross-arm at the top of the pole, some 18 feet from the ground, he fastened a pair of slack blocks to the wire and drew it taut, slipped the end of the wire through the eye in the screw of the turnbuckle, turned the end back, and wrapped it around the taut wire; he then loosened the slack blocks, and started to make a clamp on the wire. This was done by holding the wire beyond the turnbuckle with a connector in his left hand and clamping it with a pair of pliers, and, in order to make the clamp, it was necessary for him to reach beyond the turnbuckle some two feet. He had no safety belt, and to do this rested one foot either in a stirrup or on a spike on the post, and placed his other leg around the post, and held the wire with his left hand, making the connection with his right. While in this position, the screw which Mr. Wessell had connected came out of the turnbuckle, and the wire jerked plaintiff from the pole, causing him to fall to the ground, from which he suffered fractures in both ankles and other serious and permanent injuries.

Plaintiff had been engaged in this line of work for a year, was familiar with it, and had frequently made similar attachments. A turnbuckle is not a complicated appliance, and plaintiff admits that he had had this one in his hand before attaching it, and observed its condition, and says the end of the screw was about one-fourth of an inch inside the turnbuckle, and he saw nothing amiss with the threads in the attachment, but infers that the threads in the link may have been worn, and this may have loosened the screw, causing it to slip.

1. His first theory is that, if the turnbuckle had been in proper condition, and it had been properly connected with the screw, the accident could not have hap-

pened, and therefore Mr. Wessell was necessarily negligent either in furnishing a defective appliance or in failing to make a proper connection. As opposed to this inference, it will be noted that his own testimony indicates that Mr. Wessell made a proper adjustment, and that the threads in the screw were adequate, leaving only the unseen threads in the end of the link as forming the basis of a possible defect. If such a condition existed, there is no evidence that defendant failed to exercise ordinary care in not discovering it, and it must be remembered that the doctrine of res ipsa loquitur does not generally apply in favor of an injured servant who is in control of the agency which produces the injury. But, even if that doctrine was applicable, it cannot be said with any degree of certainty that the injury was caused by a defective turnbuckle or by reason of it not being properly connected with the wire by Mr. Wessell. It is true that plaintiff states that, after he had loosened the clamp, and at the time of the injury, he was holding the wire by a connector in his left hand, which prevented it from turning; the inference being it must have been caused as stated supra. But it must not be overlooked that in wrapping the end of the wire, after running it through the eye of the screw, and before loosening the clamps, plaintiff may himself have turned the screw outward from the turnbuckle, and have left so slight a connection that it was dislodged at the time he began working with the pliers. This may or may not have occurred, but it is as plausible as is the inference that the threads in the link were worn, and illustrates the conjectural nature of the theories above advanced, and further shows that an issue predicated on either of these would of necessity leave the jury to speculate as to the cause of the injury without any definite basis upon which to form a verdict.

As negligence of a defendant is not presumed, but in tort actions must be proven, it follows that the court did not err in refusing to submit this issue to the jury. See generally L. & N. v. Mannin, 217 Ky. 460, 289 S. W. 1089; Stephens v. Kitchen Lumber Co., 222 Ky. 736, 2 S. W. (2d) 374; C. N. O. & T. P. Ry. Co. v. Heath, 187 Ky. 38, 218 S. W. 305; Howard v. Stearns Lumber Company, 184 Ky. 598, 212 S. W. 463; C., N. O. & T. P. Ry. Co. v. MaGee, 202 Ky. 722, 261 S. W. 243; Hartung v. Ten Broeck Tire Co., 173 Ky. 155, 190 S. W. 677; Ashland Supply Co. v. Webb, 206 Ky. 184, 266 S. W. 1086; L. &

N. R. R. Co. v. Campbell's Adm'r, 186 Ky. 628, 217 S. W. 687.

2. As to failure of defendant to furnish him a safe place in which to work, plaintiff complains that he was not furnished a safety belt to attach to the pole, and upon which he could lean with safety, but it appears that he had been in this work for over a year, and was fully cognizant of the hazards of the business, and that he made no request for the belt, nor seemed to desire one at the time. On the contrary, he voluntarily assumed to do the work in the manner indicated, and it appears that this was the usual and customary manner of performing it. Necessarily, there was some danger in leaning from a pole in this way, but it was open, obvious, and well known to the plaintiff, and one of the risks naturally incident to the business, and under such circumstances the master does not become the guardian of the employee, but the latter is bound to take notice of the ordinary risks of nature and of matters and things that transpire before his eyes, making this clearly an assumption of risk on his part. Davis v. Briggs, 201 Ky. 784, 258 S. W. 663; Louisville Water Co. v. Darnell, 189 Ky. 771, 225 S. W. 1057; L. & N. R. R. Co. v. Gross, 209 Ky. 1, 272 S. W. 57.

Wherefore, perceiving no error, the judgment is affirmed.